## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DIMAS LOPEZ, et al., | ) | |
| on behalf of themselves and all other | ) | |
| similarity situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | 8:06CV459 |
| | ) | |
| vs. | ) | REPORT |
| | ) | AND |
| TYSON FOODS, INC., | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the plaintiffs' Motion for Class Certification (Filing No. 67) and Motion for Conditional Certification of a Collective Action Pursuant to the Fair Labor Standards Act (Filing No. 69). The plaintiffs filed briefs (Filing Nos. 68 and 70) and reply briefs (Filing Nos. 102 and 103) in support of each motion. The plaintiffs filed a proposed FLSA Notice form (Filing No. 70-2) attached to the brief. Additionally, the plaintiffs filed a single index of evidence (Filing No. 104). The defendant filed briefs (Filing Nos. 94 and 96) in opposition to each motion and a single index of evidence (Filing No. 95).

On February 25, 2008, the court held a hearing on the plaintiffs' motions. A transcript of the hearing was filed on March 5, 2008. **See** Filing No. 112. The parties relied on their earlier filed evidence. Additionally, the defendant submitted an amended Exhibit 35 - Enrique Vasquez Declaration[1]; Exhibit 52 - Peter Malishka Declaration; and Exhibit 53 - Second Declaration of Suzann L. Reynolds.

## BACKGROUND

This case arises out of the plaintiffs' employment with the defendant. On June 30, 2006, the plaintiffs filed the complaint asserting the defendant fails to pay or fully pay production and support employees at its Lexington, Nebraska, meat processing facility for time spent at work donning, doffing, cleaning personal protective equipment, and other

---

[1]Previously found at Filing No. 95-7, p. 26 (Exhibit A-35).

similar activities. **See** Filing No. 1. Based on this failure to compensate, the plaintiffs allege claims for violations of Nebraska's Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to 48-1209, and the Nebraska Wage Payment and Collection Act (Wage Payment Act), Neb. Rev. Stat. §§ 48-1228 to 48-1232. **Id.** ¶¶ 28-37. In addition, the plaintiffs allege the defendant violated their rights under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 to 219, by failing to pay employees their minimum hourly rate for compensable work and the required amount of overtime wages for hours worked in excess of forty (40) hours per week. **Id.** ¶¶ 1-3. The defendant denies violations of either state or federal law by virtue of its wage and payment practices. **See** Filing No. 19 - Answer.

## Procedural History

The plaintiffs filed the complaint on June 30, 2006. **See** Filing No. 1. On August 24, 2006, the defendant filed its answer. **See** Filing No. 19. On September 27, 2006, the court filed the initial progression order authorizing the beginning of the discovery process and setting discovery limits and other deadlines. **See** Filing No. 27. The initial progression did not schedule a discovery deadline or trial, however the order contemplated a planning conference after disposition of an upcoming motion for summary judgment. On March 20, 2007, the court denied the defendant's motion for partial summary judgment on the FLSA claim. **See** Filing No. 56. The ruling triggered the plaintiffs' deadline to seek class certification. On April 4, 2007, the court entered an order setting specific deadlines for the plaintiffs' motion, briefing and discovery related to class action certification. **See** Filing No. 59. The parties agreed to two extensions of the deadlines and the plaintiffs' motions related to class certification were filed on September 16, 2007. **See** Filing Nos. 61, 66, 67, 69. On October 25, 2007, the parties filed a joint motion to extend the briefing schedule related to class certification. **See** Filing No. 85. Therein, the parties noted "the parties have nearly completed discovery." **Id.** Specifically, the defendant had deposed half of the named plaintiffs, with the remaining depositions scheduled, the plaintiffs had conducted a Rule 30(b)(6) deposition of the defendant, and the defendant had produced "thousands of pages of responsive documents" to discovery requests. **Id.** Briefing on the class certification motions was completed by January 22, 2008. The court held a hearing on the

2

motions on February 25, 2008.  A transcript of the hearing was filed on March 5, 2008.  **See**
Filing No. 112.

## UNDISPUTED FACTS

The defendant operates numerous beef and chicken processing facilities located
throughout the United States, including a beef processing facility in Lexington, Nebraska.
**See** Filing No. 1 - Complaint ¶ 27; Filing No. 19 - Answer ¶ 27.  The text of the complaint
states:

> 39.     Under Tyson's wage compensation system, Tyson pays
> Plaintiffs and Class members who are production employees
> only during the time that they are present on the actual
> production assembly line under a system known as "gang
> time."  Conversely, Tyson, as a matter of policy and practice,
> does not pay its employees for all required pre-production line
> and post-production line activities that are necessary and
> integral to their overall employment responsibilities, such as
> donning and doffing clothing, protective equipment, cleaning
> and sanitizing that equipment, walking to the production line
> from their locker and vise-versa after already performing
> compensable activities and before the end of compensable
> time, working on knife maintenance equipment known as
> "steels" or "mousetraps", and waiting in line to receive required
> knives, supplies[,] tools and equipment needed for production
> line activities.  Tyson pays its employees only 4 minutes a day
> for all of these activities, whereas Tyson's employees spend
> more than 30 minutes a day performing these compensable
> activities.  Tyson also requires its employees to be present at
> the production line for periods after their "gang time" (i.e., the
> time when they stop getting paid) but they are not paid for that
> time.
>
>                                  * * *
>
> 41.     As a consequence of the compensation system utilized
> by the Defendant Tyson, Plaintiffs and Class members are not
> paid at the beginning of each shift for the time it takes to don
> uniforms, obtain gear, maintain gear, walk to sanitation stations
> and sanitize the required PPE [personal protective equipment],
> walk to productions areas and don PPE.

3

**See** Filing No. 1 - Complaint.  Additionally under the gang time system, the plaintiffs must remove their PPE and then re-don it, during some paid or unpaid breaks, but are not paid for this activity as work.  **Id.** ¶¶ 44-45.

The defendant admits that most of the hourly production workers at the Lexington, Nebraska facility are paid based on gang time, plus four minutes a day for pre- and post-shift activities.  **See** Filing No. 19 - Answer ¶ 39.  The defendant alleges the following uncontroverted facts, which are supported by evidence in the record.

Currently, the Lexington plant has 1,979 hourly production employees on two shifts. Production operations comprise several different areas, including Slaughter, Processing (including Packaging), Hides, Rendering, and Materials Handling.  These areas are further divided into various departments, each performing a different aspect of production.  For example, the Materials Handling department has seven different positions.  A supervisor may be responsible for one or more departments, depending on the functions of the department.  The majority of the hourly employees work on the processing floor, approximately 600 employees per shift with two shifts.  Another 200 to 250 hourly employees, each shift, work in the slaughter department.

All hourly employees are assigned a locker in the main locker rooms located off of the production hallway.  Employees store their required and optional clothing in the lockers. Some knife users store certain equipment in lockers near their production area.  Hourly production employees are required to wear certain clothing items, however not all employees wear the same items, such as hairnets, hearing protection, safety glasses and steel-toed boots.  The requirements differ between departments.  Additionally, some gear may be required in one department and optional in another, such as a white shirt and white pants (whites) or a white frock.  At the end of shifts, the rubber and fabric clothing is placed in laundry bins in the main production hallway or the locker room.  The items are cleaned and returned to the employees' locker between shifts.

In January 2007, the plant instituted a new policy for paying knife users extra minutes each shift for certain clothes-changing and washing activities.  Depending on their job codes, knife users now receive between 4 and 10 minutes extra paid minutes per shift. Many employees throughout the plant use knives.  Previously, the extra minutes were paid

4

by department, if there was a knife user in the department. Knife users are required to wear additional protective clothing, however the type of clothing is dependant on the type of knife or knives used by the particular employee. Supervisors have discretion to require employees in their department to wear additional protective items. Some knife users may also have to carry a scabbard, a "steel" instrument, and/or one or two hooks to move meat. Most, but not all, knife users must dip their knives and some other equipment into a sanitizing solution pre-shift, but not at other times. Knife users are required to rinse some equipment in the production area at the end of the shift. No other pre- or post-shift washing is required.

Some protective equipment must be put on before entering the production area. However, other equipment may be put on while walking to or on the production floor. Some employees must be ready to work at the beginning of the shift, while others are required to be ready when the first piece of meat passes the station, which may be one to four minutes after the start of the shift. Hourly production employees receive one 15-minute paid break and one 30-minute unpaid meal period per shift. Employees do not have to perform any washing or sanitizing during their meal period. They may wear certain gear during breaks or hang other items on hooks in the production area. The employees may take off the equipment while walking off of the production floor.

In many departments, employees working on the production line may leave for the meal period as soon as the last piece of meat passes their work station and must be back in position 30 minutes later or when the first piece of meat passes their work station. But there are several exceptions to this practice. For example, some supervisors allow employees to "cover" for each other, meaning that one team member can take a longer meal period or break while a fellow team member holding the same job position increases the pace of production work. Employees can work out this arrangement informally. Some supervisors allow employees who do not work on a production line to take their meal period at their discretion and to take longer than 30 minutes. In other instances, an employee may perform certain tasks before the meal period and such employee is paid for returning knives and changing clothes.

All hourly production employees are required to clock in and out before and after their shift.  Clocking in and out is for attendance purposes and generally does not affect paid time.  Most, but not all, hourly production employees are paid by gang time, or the length of production in their department, which is the time it takes for all cattle to travel on mechanized belts through the department.  Normally, gang time is seven hours and 56 minutes, although production time may sometimes run shorter or longer.  In such cases, employees may be paid for the actual production time, while some supervisors may approve paying employees until their clock out times.  Each day the expected length of production in the Slaughter and Processing areas for the next day's shift work is posted on a dry erase board at the plant entrance.

There are exceptions to paying hourly production employees by gang time.  Some departments are paid by predetermined start and end times, for example a department may be paid by the posted production time even if production is completed early.  Employees in the Materials Handling department are paid for the period from the beginning of their shift until they clock out.  Such employees do not perform any pre-shift set up or post-shift clean up.  Also, some other employees who are not on the production line are not paid with the gang time system.  Some employees who are assigned or volunteer for set-up or clean-up activities are paid for the additional time beyond their gang time activities.  For example, some employees are paid for the thirty minutes before the start of the shift, even if they arrive later, as long as they complete the set up activities before the shift starts.

During the class period, the named plaintiffs have been paid hourly wages ranging from $9 to $13.30 per hour.  Generally, all hourly production employees have been paid wages ranging from $9 to $17.20 per hour.  A typical shift is 7 hours 56 minutes long.  Employees who work longer than eight hours are typically paid until they clock out plus an additional fifteen minutes to account for a paid break they would have otherwise received.

There are currently thirteen named plaintiffs.  None of the named plaintiffs have worked in the Hides department.  The named plaintiffs admitted they could not testify about what employees in other departments are required to wear or how they are paid.

6

**ANALYSIS**

## I.     Fair Labor Standards Act

The plaintiffs seek to conditionally certify their FLSA claim, pursuant to 29 U.S.C. § 216(b), to facilitate notification to all potential interested members of the pendency of the action and their ability to join as parties.  Pursuant to the FLSA a collective action may be maintained "by any . . . employee [ ] for and in behalf of himself . . . and other employees similarly situated" to recover damages for the failure to pay overtime.  29 U.S.C. § 216(b); 29 U.S.C. § 207.  An FLSA "collective action" is different from a Rule 23 class action.  "In a class action, a potential plaintiff's claim is automatically included in the case unless he expressly 'opts out' of the class.  By contrast, a potential plaintiff's claim will be included in a collective action *only* if he expressly opts *in* to the action."  ***Parker v. Rowland Express, Inc.***, 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007) (emphasis in original).  The district court, in its discretion, may authorize the named plaintiffs to transmit notice of the lawsuit to other potential claimants upon a showing the named plaintiffs are similarly situated to the others whom they seek to represent.  ***Id.***  "[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs."

Succinctly put,

> At the first stage, a class is conditionally certified on a relatively minimal showing, and then prospective plaintiffs can opt in to the action by filing consent forms.  At the second stage, which almost always follows substantial discovery, plaintiffs must make a stronger showing to continue to proceed on a collective basis.  If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified.  Typically the second stage is triggered when the defendant moves to decertify the conditionally certified class.

***Parler v. KFC Corp.***, 529 F. Supp. 2d 1009, 1011 (D. Minn. 2008) (internal citation omitted).

Furthermore, the first stage or "notice stage" may be based only on the pleadings and any affidavits in the record.  ***Parker***, 492 F. Supp. 2d at 1164.  At this stage, "[t]he court does not make any credibility determinations or findings of fact with respect to

contrary evidence presented by the parties at this initial stage." **Burch v. Qwest Commc'ns Int'l, Inc.**, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citation omitted). The plaintiffs have the burden of presenting evidence "establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan." **Id.** "A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." **Severtson v. Phillips Beverage Co.**, 141 F.R.D. 276, 278-79 (D. Minn. 1992) (language from Mag. J. order contained in District Court opinion affirming). Ultimately, there must be meaningful identifiable facts or legal nexus binding the claims "so that hearing the cases together furthers the purposes of section § 216, is fair to both parties, and does not result in an unmanageable trial." **Falcon v. Starbucks Corp.**, No. H-05-0792, 2008 WL 155313, at * 5 (S.D. Tex. Jan. 15, 2008) (Slip Copy); **see England v. New Century Fin. Corp.**, 370 F. Supp. 2d 504, 507-08 (M.D. La. 2005). "Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." **H & R Block, Ltd. v. Housden**, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (internal citations omitted). After conditional certification, discovery could continue as a collective action. **Parker**, 492 F. Supp. 2d at 1164.

In contrast, a second stage or final determination is usually made "after discovery is largely complete and the matter is ready for trial" when the court is able to make "a factual determination on the similarly situated question." **Id.** (citation omitted). "During this second stage analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." **Thiessen v. Gen. Elec. Capital Corp.**, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (internal quotations and citation omitted).

The parties dispute which standard the court should apply in this case to determine whether the FLSA class claim should be certified. The plaintiffs argue the conditional certification process is "notice stage" and based on a more lenient standard. The plaintiffs contend the discovery completed thus far has not been merits-based discovery. However,

8

the defendant states the parties have conducted significant discovery so the plaintiffs should be held to a higher standard for class certification. **See** Filing No. 94 - Brief p. 2.

The court finds this case remains at a preliminary stage for purposes of class certification. Although some discovery has taken place, the discovery was not merits based or intended to be completed at this stage of proceedings. The matter is not scheduled yet for trial, nor even has there been a discovery deadline imposed. Although the defendant seeks to by-pass the notice stage, the cases relied upon by the defendant are distinguishable from the case at bar. In large part, in the cases relied upon by the defendant the parties agreed to notice without court involvement, many members had already opted in, and/or the case had been ongoing for some years with extensive or substantial discovery completed. **See *Fox v. Tyson Foods, Inc.*,** No. 4:99-CV-1612-VEH (N.D. Ala. Nov. 15, 2006) (unpublished opinion can be found at Filing No. 95, Exhs. 49 and 50); ***King v. West Corp.*,** No. 8:04CV318, 2006 WL 118577 (D. Neb. Jan. 13, 2006); ***England v. New Century Fin. Corp.*,** 370 F. Supp 2d. 504, 511 (M.D. La. 2005); ***Basco v. Wal-Mart Stores, Inc.*,** No. 00-3184, 2004 WL 1497709, at *5, 8 (E.D. La. July 2, 2004).

However, where discovery is not substantially completed or there is not enough evidence to undertake the final analysis, courts typically evaluate the collective action issues under the more lenient "notice stage" criteria. **See *Fast v. Applebee's Int'l Inc.*,** 243 F.R.D. 360, 363 (W.D. Mo. 2007); ***Thiessen v. Gen. Elec. Capital Corp.*,** 996 F. Supp. 1071, 1080-81 (D. Kan. 1998). In any event, the court should not overlook the discovery thus completed, if such discovery suggests preliminary approval of the collective action is improper. ***West v. Border Foods, Inc.*,** No. 05-2525, 2006 WL 1892527, at *3, 7 (D. Minn. July 10, 2006). In this matter, the court has looked closely at the discovery evidence filed by the parties.

Here, the plaintiffs' propose a collective action consisting of:

> All present and former production and support employees of the defendant's Lexington, Nebraska meat processing facility who have been employed for the defendant at any time since July 1, 2003.

**See** Filing No. 69 - Motion p. 1. The plaintiffs further narrow the collective action by specifying the members must be "hourly employees who (1) don, doff, wash or sanitize <u>any</u>

sanitary and protective clothing, equipment and gear; and/or (2) maintain knives, steels and any other tools or equipment that are used in the production process." **See** Filing No. 102 - Reply p. 9-10.  The plaintiffs' definition also includes those employees not paid strictly on gang time, but who none-the-less must don clothing, etc., prior to beginning paid time.  The time period represents a three-year period, assuming the plaintiffs will prove willfulness. The plaintiffs seek to facilitate class notice by having this court

> (1)    order the defendant to produce each class member's name and address;
> (2)    approve a Notice form;
> (3)    permit the plaintiffs to send the Notice form to each potential class member; and
> (4)    order the defendant to have the Notice form circulated by its employees to each potential class member who cannot be reached by mail.

**See** Filing No. 69 - Motion p. 1.

The plaintiffs contend the named plaintiffs are similarly situated to all potential class members because the defendant uses a uniform pay practice - the gang time system.  **See** Filing No. 70 - Brief p. 7.  The plaintiffs argue that although the defendant disputes whether the practice is a violation of the FLSA, the system is uniform among production workers at the Lexington, Nebraska facility.  **Id.**  The plaintiffs further argue even though some employees are not paid strictly by use of the gang time system, the employees must engage in unpaid work activities before paid time begins.  **See** Filing No. 102 - Reply p. 9-10.  The plaintiffs also contend that although the damages may be different between plaintiffs or difficult to calculate, such damages may be approximated under Supreme Court decisions and other precedent.

The defendant argues there is evidence that not all hourly employees are paid strictly on the gang time system, some employees get more than 30 minutes for a meal break, and supervisors have some discretion about what activities are paid.  These differences, according to the defendant, show the plaintiffs are not representative of the other hourly employees.  The defendant argues the fact that the defendant does not exclusively use the gang time system to pay the hourly employees defeats the plaintiffs' motion for a collective action.  In addition, the defendant contends the hourly employees

10

are not all treated the same even under the gang time system, thus the named plaintiffs are not similarly situated to potential class members. **See** Filing No. 94 - Brief p. 1. Further the defendant states some employees are paid for the time they spend on donning, doffing and washing activities. ***Id.*** Additionally, supervisors have discretionary authority over the pay of individuals, which differs between departments and even within job codes. Finally, the defendant contends they have unique defenses against individual plaintiffs based, for example, on disparity of damages, type of clothing or equipment used and which activities are actually paid or compensable.

Without making any credibility determinations, the court finds the plaintiffs have met their burden of presenting evidence establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan. Here, based on the defendant's admissions and the evidence before the court, there is little doubt a common policy or practice exists with regard to pay. The gang time system facilitates the practice, but those who are not paid pursuant to the gang time system may also be subject to the practice. The policy or practice in issue is requiring the employees to perform uncompensated activities. There are meaningful identifiable facts and a legal nexus binding the claims of the proposed collective action members. There are several plaintiffs already willing to proceed against the defendant and additional collective action members seek to join the matter. The differences among employees (i.e., types of equipment, amount of time spent, supervisor discretion) do not diminish this predominant relevant similarity. Likewise, the defenses noted by the defendant would apply to the plaintiffs across the board. However, whether certain activities are compensable will not be determined at this stage of the litigation. At this time, it appears that hearing the cases together furthers the purposes of section § 216, is fair to both parties, and will not result in an unmanageable trial. Under the circumstances presented, the plaintiffs are adequate representatives of the defendant's past and current employees who engage in allegedly compensable, but uncompensated work activity. Thus conditional class certification is warranted.

For this reason, the court recommends granting the plaintiffs' leave, as requested, to proceed with class notice. The defendant has not objected to the proposed notice filed

by the plaintiffs or any of the other specific relief requested.  Accordingly, the plaintiffs' motion should be granted in all respects.

## II.   State Law Claims

The plaintiffs seek class certification through Federal Rule of Civil Procedure 23 for claims based on state law.  Such claims are legally distinct from the FLSA claims, but based on the same factual background.  In short, the plaintiffs allege the defendant's failure to pay the employees their hourly pay rate for the time spent on certain break, pre- and post-shift activities is a violation of Nebraska's Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to 48-1209, and a violation of the Wage Payment Act,  Neb. Rev. Stat. §§ 48-1228 to 48-1232.  The plaintiffs argue class treatment of these claims is appropriate under the circumstances.  The defendant challenges the appropriateness of class certification under Rule 23 on nearly every factor.  Additionally, the defendant contends class certification is incompatible with the necessary evidence required to support each element of the claims under state law.

### A.   Nebraska Wage Payment and Collection Act

The Wage Payment Act requires employers to pay all wages due to employees at regular intervals.  Neb. Rev. Stat. § 48-1230.  Upon failure of the employer to so pay its employees, the Wage Payment Act authorizes suit by an employee against an employer "for wages which are not paid within thirty days of the regular payday."  Neb. Rev. Stat. § 48-1231.  Under the Wage Payment Act, "[w]ages means compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis."  Neb. Rev. Stat. § 1229(4).  Based on this plain language, Nebraska courts require a plaintiff to show the disputed wages were previously agreed to by a defendant.  **See _Freeman v. Central States Health & Life Co. of Omaha_**, 515 N.W.2d 131, 134-35 (Neb. App. 1994).  However, such agreement need only be that the defendant did "agree to pay plaintiffs at the appropriate rate of pay for the

12

duties they were performing." *Hawkins v. City of Omaha*, 627 N.W.2d 118, 130 (Neb. 2001).

### 1.    Burdens

The defendant argues the plaintiffs' burden of proof under the Wage Payment Act would include each class member testifying that the defendant had agreed to payment for the uncompensated time.  The defendant states the agreement with each plaintiff was to be paid by the hour based upon gang time, or other system as discussed above, but not for the subject disputed activities.  Further, the defendant contends that since none of the plaintiffs assert a written contract exists covering the disputed activities, the claim is based upon an implied contract.  The defendant further contends the showing necessary to prove implied contract is inherently fact specific and would be unique to each putative class member.  For this reason, according to the defendant, class treatment is inappropriate.  In contrast, the plaintiffs contend they all stand in the same position relative to the Wage Payment Act claim.  In essence, the employment relationship provides an agreement between the defendant and each plaintiff for an hourly rate of pay for the hours worked.

Whether the defendant is correct about the application of the Wage Payment Act to these plaintiffs is a matter which will impact them all equally.  Either the plaintiffs' theory is viable or it is not.  Ultimately, the court will not have to hear testimony from each putative class member about their "understanding" of the defendant's agreement to pay, because no plaintiff makes a separate argument based on unique facts or law on this issue.  Accordingly, the nature of the plaintiffs' claims, i.e., reliance on the Wage Payment Act, do not, on that basis alone, defeat class certification.

### 2.    Availability of Class Treatment

The defendant argues class treatment of claims is not available under the Wage Payment Act.  The Wage Payment Act provides: "An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court."  Neb. Rev. Stat. § 48-1231.  The defendant contends that since the plain language does not provide for class treatment,

such treatment is precluded.  The defendant offers the plain language of the Wage and Hour Act, which does contemplate representative actions, as a contrast.  **See** Neb. Rev. Stat. § 48-1206(5) ("Action to recover unpaid minimum wages . . . may be maintained . . . by any one or more employees for and in behalf of himself . . . and other employees similarly situated.).  The defendant states the Unicameral clearly could have made provision for class action treatment under the Wage Payment Act, if it had so intended.  Further, the defendant states it is not aware of any class action under the Wage Payment Act filed in state or federal court.  **See** Filing No. 96 - Brief p. 23.

The plaintiffs point out that the statute does not by its explicit terms preclude class actions.  Additionally, the plaintiffs argue if such actions were precluded under state law, the **Erie** doctrine trumps the relevant state law.  Specifically, the plaintiff contends federal procedural law is used over conflicting state procedural law in suits based on diversity jurisdiction.  **See** Filing No. 103 - Reply p. 9 (**citing Erie Railroad Co. v. Tompkins**, 304 U.S. 64 (1938).  In any event, the plaintiffs note there is no apparent conflict between the state and federal laws.

The defendant disagrees (TR. 67-69).  The defendant relies on **Cole v. Chevron USA, Inc.**, No. 2:06cv249, 2007 WL 3013207 (S.D. Miss. Sept. 24, 2007) (slip op.).  In **Cole**, the consumer protection state statute explicitly precluded class treatment.  Under the circumstances there, the court determined the statute was substantive, thus the **Erie** doctrine did not allow the procedural application of Rule 23 to trump state law.

While the **Cole** analysis is persuasive, the same result is not required here.  There is no direct collision between the Wage Payment Act and Rule 23 for two reasons.  First, Rule 23 "governs the procedure for pursuing available class actions in federal courts." however a state law barring class action treatment, "establishes a bar to certain claims being considered for class action treatment on a threshold level."  **Cole**, 2007 WL 3013207, at * 12 (**quoting Leider v. Ralfe**, 387 F. Supp. 2d 283, 290 (S.D.N.Y. 2005)).  Therefore the state law is not necessarily in conflict with the procedure, which is more broad.

Second, the Wage Payment Act does not explicitly bar class action treatment of claims.  Although representative actions are allowed by the plain terms of the Wage and Hour Act, the court will not read the Wage Payment Act to bar such actions based on the

14

absence of key terms.  Had the Unicameral intended to bar class actions, it could have simply and explicitly done so, as was done in the statute reviewed in **Cole.**

### B.    Wage and Hour Act

The Wage and Hour Act was enacted to establish a minimum wage for all workers and to safeguard existing minimum wage compensation standards.  Neb. Rev. Stat. § 48-1201.  The Wage and Hour Act requires employers to pay each employee wages at a minimum rate.  Neb. Rev. Stat. § 48-1203(1).  The rate was $4.25 per hour through August 31, 1997, and has gone up, over time, to $5.85 for the period July 24, 2007, through July 23, 2008.  **Id.**  "Any employer who violates any provision of section 48-1203 shall be liable to the employees affected in the amount of their unpaid minimum wages, as the case may be."  Neb. Rev. Stat. § 48-1206(4).

The defendant contends the plaintiffs do not have a cause of action under the Wage and Hour Act because they were each paid well over the minimum wage set under the statute.  Specifically, the defendant argues the plaintiffs would need to demonstrate:  "(1) they had uncompensated hours during each day for which they should have been paid; and (2) the number of uncompensated hours is great enough that when their wage rates are divided by the total number of hours for which they should have been paid (i.e., the number of hours for which they were paid, plus their uncompensated hours), their adjusted wage rates were below the state minimum wage rate."  **See** Filing No. 96 - Brief p. 9-10.  Further, the defendant argues the plaintiffs will have to rely on some other law to satisfy the burden under the first component because the Wage and Hour Act does not govern the compensability of time or activities.  **Id.** at p. 10.  The defendant contends that because the plaintiffs must rely on either the FLSA or the Wage Payment Act, class certification must fail based on the defendant's argument specifically raised as to those statutes.  In addition, the defendant asserts the plaintiffs cannot merge the FLSA claim and the state statute claim under Rule 23 because there is a fundamental conflict in the standards.

The plaintiffs dispute the method used by the defendant to determine whether a violation of the Wage and Hour Act exists.  Additionally, the plaintiffs dispute the method of application described by the defendant.  In any event, aside from the arguments already

made by the defendant elsewhere, the defendant does not raise an issue with respect to the Wage and Hour Act which bars class certification. The arguments raised by the defendant may be more suitable to a motion to dismiss. Accordingly, the court will determine the suitability of class treatment based on the parties' substantive arguments directed to that specific issue.

### C.   Class Certification

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994) (**citing** *Smith v. Merch. & Farmers Bank of W. Helena*, 574 F.2d 982, 983 (8th Cir. 1978)).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if:
> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)   the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a). The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting** *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.'" *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." **Blades v. Monsanto Co.**, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing Amchem**, 521 U.S. at 614).  Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication.  **See** Fed. R. Civ. P. 23(b).

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B):  "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."   As modified during the February 25, 2008 hearing, the plaintiff seeks to certify a class of:

> All current and former production and support workers of the defendant's Lexington, Nebraska meat processing facility who have been employed by the defendant at any time from July 1, 2002 to the present.

**See** Filing No. 67- Motion p 1; Filing No. 96 - Brief p. 10; Filing No. 112 - TR. 57-58.

The court will review, *seriatim*, each of the requirements the plaintiffs must satisfy with regard to class certification.

### 1.      Rule 23(a) Requirements
#### i.      Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. **Amchem**, 521 U.S. at 613.  Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable."  **See** Fed. R. Civ. P. 23(a)(1).  Rule 23(a) "requires only the impracticality, not the impossibility, of joinder."   **United States Fid. & Guar. Co. v. Lord**, 585 F.2d 860, 870 (8th Cir. 1978).  The plaintiffs need only show "that joining all members of the class would be difficult."   **Caroline C. By and Through Carter v. Johnson**, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted) (stating "as few as 40 class members should raise a presumption that joinder is impracticable").   "The Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]"   **Estate of**

17

*Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001) (**citing *Emanuel v. Marsh***, 828 F.2d 438, 444 (8th Cir. 1987); ***Boyd v. Ozark Air Lines, Inc.***, 568 F.2d 50, 54 (8th Cir. 1977)).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." ***Evans v. U.S. Pipe & Foundry Co.***, 696 F.2d 925, 930 (11th Cir. 1983).  Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." ***Chesher v. Neyer***, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing *Gen. Tel. Co. of S.W.***, 457 U.S. at 160).  A court "may consider reasonable inferences drawn from facts before [it] at the stage of the proceedings." ***Senter v. General Motors Corp.***, 532 F.2d 511, 523 (6th Cir. 1976); **see *Serfaty v. Int'l Automated Sys., Inc.***, 180 F.R.D. 418, 420 (D. Utah 1998).

In the instant case, there are 1,979 hourly production employees at the Lexington, Nebraska facility.  Each of these employees is a potential class member, particularly because the defendant admits it uses the gang time system for most of the hourly production workers.  In addition, there is no dispute the relevant employees who are not subject to the gang time system are treated the same as gang time employees with respect to the disputed conduct - for example, these employees are typically not paid for donning certain required clothing and equipment prior to the beginning of the paid shift time.  The defendant does not dispute numerosity.  **See** Filing No. 96 - Brief p. 11.

After consideration of the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement. **See *Paxton v. Union Nat'l Bank***, 688 F.2d 552, 559-60 (8th Cir. 1982).  Based upon the evidence presented, the large number of putative class members, nearly 2,000 including only the current employees, justifies class treatment.  It is evident a class of this size would promote judicial economy over individual suits, particularly under the circumstances of this case.

### ii.   Commonality

Second, the plaintiffs must prove the element of commonality.  **Amchem**, 521 U.S. at 613.  Rule 23(a)(2) requires there be "questions of law or fact common to the class."  **See** Fed. R. Civ. P. 23(a)(2).  "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'"  **DeBoer v. Mellon Mortgage Co.**, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting Paxton**, 688 F.2d at 561).  However, "[t]he rule does not require that every question of law or fact be common to every member of the class."  **Paxton**, 688 F.2d at 561.  Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  **Id.** at 561 (citation omitted).  One district court has stated "the commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied."  **In re Hartford Sales Practices Litig.**, 192 F.R.D. 592, 603 (D. Minn. 1999).

The plaintiffs argue there are common questions of law and fact because the case is based on whether the defendant fails to pay hourly employees for all work prior and subsequent to their shift.  **See** Filing No. 68 - Brief p. 3.  In contrast, the defendant argues there is wide factual variations among the employees due to their particular activities including types of clothing worn, equipment used and supervisory personnel.  **See** Filing No. 96 - Brief p. 11.  The court concludes the core of the plaintiffs' suit is based on the same law and common facts.  Here, the defendant relies on a uniform labor practice for most of its production employees.  The practice results in most of the employees engaging in activities for which they are not paid.  While the exact amount of time for employees may vary, the employees are performing nearly identical tasks under nearly identical conditions.  Variation among employees due to the types of clothing worn, equipment used and supervisory personnel does not diminish the nature of the general pay system.  Based upon the evidence presented and the parties' pleadings, the undersigned magistrate judge finds the commonality requirement has been satisfied as to the class as a whole.

### iii.    Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. *Amchem*, 521 U.S. at 613. Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citations omitted and alteration in original); **see** *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. However, the plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).

The plaintiffs contend the claims of the named plaintiffs are typical of the whole class and the named plaintiffs' allegations are not based on conduct unique to them but rather on a pay system which affects all class members. **See** Filing No. 68 - Brief p. 10. The defendant denies the plaintiffs can show typicality because proof of a violation of state law will require individualized inquiry. **See** Filing No. 96 - Brief p. 12. Specifically, the defendant argues the court must determine the terms of each of the plaintiffs' alleged implied contracts concerning the uncompensated time at issue.

It is true "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation ." *In re Milk Products Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999) (citing cases). By the same token, it is inappropriate to certify a class "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v.*

20

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  However, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory."  *Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004).

As a possible unique defense, the defendant reiterates that each plaintiff will have to show an "implied contract" with the defendant, wherein the defendant agreed to pay for the pre- and post-shift activities which are the subject of this suit.  As a result, an implied contract would have to be shown for each employee before that employee would have the opportunity to establish liability.  After reviewing this argument in light of all the evidence presented, the court rejects the defendant's argument because employees do not present unique arguments with regard to any implied contracts.  Whether the employees are engaging in compensable pre- and post-shift activities will not depend on individual contract analysis.  Instead the plaintiffs all rely on their non-unique general employment agreement with the defendant to work for an hourly wage.

In this case, all of the named plaintiffs are hourly production employees at the Lexington facility who have based their claims on violations of the same state statutes.  Specifically, the named plaintiffs are suing for their uncompensated time spent at work donning, doffing, and cleaning personal protective equipment.  **See** Filing No. 1, ¶¶ 28-37.  The defendant asserts there are individualized analyses which must take place based on the claims.  However, as discussed above, the claims and arguments made by the named plaintiffs are typical of the proposed class members.  The plaintiffs do not rely on the arguments raised by the defendant with respect to individual implied contracts, etc.  Further, even though the named plaintiffs do not have experience in each of the facility's departments, such experience is not necessary under the plaintiffs' claims.  The critical payment system is not unique to a particular plaintiff or to the named plaintiffs.  Most of the defendant's employees are paid based on a system which excludes payment for certain activities.  Accordingly, the plaintiffs have met their burden of showing their claims are typical of those of the putative class.

### iv.      Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation.  ***Amchem***, 521 U.S. at 613.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  **See** Fed. R. Civ. P. 23(a)(4).  "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  ***Paxton***, 688 F.2d at 562 (**citing *Gonzales v. Cassidy***, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs argue they and their counsel will adequately protect the interests of all proposed class members because the named plaintiffs have the same interests as all production workers in recovering wages.  **See** Filing No. 68.  The defendant does not dispute the adequacy of counsel.  **See** Filing No. 96 - Brief p. 13.  However, the defendant argues the class representatives do not have common interests with other members of the class because not all job classifications are represented.  Additionally, the defendant maintains each employee is subject to a different work experience.

The court has reviewed the evidence presented and finds the plaintiffs have common interests with the proposed members of the class under the definition of the claim used by the plaintiffs and sufficient interest in prosecuting the matter on behalf of the class. In fact, as the plaintiffs have defined their claims, the named plaintiffs have interests identical to the interests of the class.  The plaintiffs' counsel also appears qualified.  Thus, the undersigned magistrate judge finds the plaintiffs and their counsel will fairly and adequately protect the interests of the class, thus meeting the adequacy of representation element under Rule 23(a)(4).

### 2.      Rule 23(b)(1) Requirements

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3).  ***Amchem***, 521 U.S. at 614.  The plaintiffs have moved to do so under Rule 23(b)(1) and/or Rule 23(b)(3).  Under Rule 23(b)(1), the court must find:

prosecuting separate actions by or against individual class members would create a risk of:

(A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**See** Fed. R. Civ. P. 23(b)(1).

Here, the defendant argues the individualized nature of the employee experience would prevent any member from being impacted by other adjudications. **See** Filing No. 96 - Brief p. 15. However, the court finds the defendant's uniform pay system affects each employee in the same way. Further, a determination about whether the pay system is a violation of state statute should be uniform for each plaintiff. **See *Thomas v. SmithKline Beecham Corp.***, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001) ("Certifications under [Rule 23(b)(1)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members."). The plaintiffs also contend it is unlikely the defendant's employees would pursue their claims individually due to the resources required to litigate. There is a risk that if each of the production employees were to litigate separately varying outcomes would result with regard to, for example, the types of activities which are compensable.

### 3.     Rule 23(b)(3) Requirements

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **See** Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must

be present for an action to be maintained under that provision." ***Bryant v. Bonded Accounts Serv./Check Recovery***, 208 F.R.D. 251, 261 (D. Minn. 2000).

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem***, 521 U.S. at 623 (**citing** 7A Wright, et al., ***supra***, § 1777, at 518-19 n.19). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." ***Jenkins v. Raymark Indus., Inc.***, 782 F.2d 468, 472 (5th Cir. 1986). "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." ***D'Alauro v. GC Servs. Ltd. P'Ship***, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted). Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright, et al., ***supra***, § 1778.

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

***Blades v. Monsanto Co.***, 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted).

In this case, common issues are the same in all class members' cases and therefore the same issue "predominates" over their individual cases. Each case for each class member is about the defendant's common pay system for activities by production employees at the Lexington, Nebraska facility. Because this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied.

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." **See** Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion

24

that the adjudication of common issues will help achieve judicial economy.  Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial <u>dis</u> economy." **Estate of Mahoney**, 204 F.R.D. at 161 (**quoting *Valentino v. Carter-Wallace, Inc.***, 97 F.3d 1227, 1234 (9th Cir. 1996); ***Smith v. Brown & Williamson Tobacco Corp.***, 174 F.R.D. 90, 94 (W.D. Mo. 1997) (emphasis in original)).

The plaintiffs contend there is no alternative forum superior to a class action under the facts of this case.  A class action would give thousands of workers an opportunity to resolve their claims in one lawsuit, as opposed to the same number of individual lawsuits over the same issue.  **See** Filing No. 68 - Brief p. 15.  The defendant contends proof of causation and liability is not identical to each class member because for each class member it must be shown an implied contract existed between each individual class member and the defendant governed whether any uncompensated time was to be paid. **See** Filing No. 96 - Brief p. 11-12.

The undersigned finds resolution of the claims, at least as to the liability of the defendant to each individual class member, through a class action would, under the circumstances, be an efficient allocation of judicial resources.  As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendant because the core issue and arguments of each putative plaintiff is the same.  A class action is a superior method of resolution of the issues compared to individual arbitration or litigation because of the collective nature of the claims and defenses as described above. Upon consideration,

### IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:

1.      The plaintiffs' Motion for Class Certification (Filing No. 67) be granted.  The Class should be defined as:

> All current and former production and support hourly employees who (1) don, doff, wash or sanitize any sanitary and protective clothing, equipment and gear; and/or (2) maintain knives, steels and any other tools or equipment that are used in the production process, of the defendant's Lexington,

> Nebraska meat processing facility who have been employed by the defendant at any time from July 1, 2002 to the present

2.    The plaintiffs' Motion for Conditional Certification of a Collective Action Pursuant to the Fair Labor Standards Act (Filing No. 69) be granted in all respects. Conditional certification should apply to the group defined as:

> All present and former production and support hourly employees who (1) don, doff, wash or sanitize any sanitary and protective clothing, equipment and gear; and/or (2) maintain knives, steels and any other tools or equipment that are used in the production process, of the defendant's Lexington, Nebraska meat processing facility who have been employed for the defendant at any time since July 1, 2003.

### ADMONITION

Pursuant to NECivR 72.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 1st day of May, 2008.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge

26