**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **DIMAS LOPEZ, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | **CIVIL NO. 8:06-cv-0459-JFB-TDT** |
| | * | |
| **vs.** | * | |
| | * | |
| | * | |
| **TYSON FOODS, INC.,** | * | |
| | * | |
| | * | |
| **Defendant.** | * | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1, Plaintiffs respectfully move for partial summary judgment on Defendant Tyson Foods, Inc.'s (hereafter "Tyson") stated defenses to liability under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and Nebraska state law for failing to pay Plaintiffs for all hours of work during the continuous workday each shift.

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Tyson is liable to Plaintiffs for failing to pay them for actual time spent performing the pre-shift and post-shift donning, doffing and washing of required personal protective equipment (hereafter "PPE") and tools/gear as well as related walking time (to and from the production floor), and waiting time.  Tyson is also liable to Plaintiffs for the time Plaintiffs spend donning, doffing and washing required PPE and tools/gear during their unpaid breaks.

In terms of pre-shift time, this compensable time commences at the performance of the first principal activity that they are required to perform on Defendant's premises (obtaining a

company-issued and required frock, company issued and required shirt and pants or other required PPE and tools/gear from their locker) and runs to the start of their "gang time" on the production floor, including all walking and waiting time.  In terms of post-shift time, this compensable time commences at the end of their "gang time" on the production floor and includes all time spent doffing and washing their required PPE and tools/gear up to the performance of the last principal activity for the day (stowing PPE, tools and gear in their locker, disposing of their frock or soiled protective equipment in the laundry bin, which ever comes last), including all walking and waiting time that occurs prior to the last compensable work activity.  In terms of unpaid breaks, the lost compensable time includes all time spent during the unpaid break donning, doffing or washing their required PPE.

In Alvarez v. IBP, Inc., 546 U.S. 21 (2005), the Supreme Court emphatically reaffirmed the wage and hour principle known as the "continuous workday" rule, which requires employers to pay an employee for all activities that occur between the first and last principal activities of the employee's workday.  See, Alvarez, 546 U.S. at 28, quoting 29 C.F.R. 790.6(a).  The unanimous Supreme Court in Alvarez reiterated its long-held view that any activity that is integral and indispensable to a principal activity is itself a principal activity, and therefore, compensable under the FLSA.  Alvarez, 546 U.S. at 37.  As applied to the meat processing industry, the Supreme Court specifically held that the donning and doffing of required sanitary and safety equipment is integral and indispensable to meat processing workers' principal work activities and that such activities commenced and concluded the continuous workday.  Alvarez, 546 U.S. at 32-33.

Following the Supreme Court's decision in Alvarez, the U.S. Department of Labor ("DOL") issued a Wage and Hour Advisory Memorandum explaining the impact of Alvarez and

reiterating its own long-held view that donning and doffing activities required to be performed in meat processing plants start and end the continuous workday. See, DOL Wage and Hour Advisory Memorandum No. 2006-2, May 31, 2006 **(Plaintiffs' Exhibit "A")** In that Memorandum, DOL specifically advised that obtaining PPE and gear at the beginning of the workday is a principal activity that triggers the commencement of the compensable workday. Id. ("the compensable day starts once the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker or another designated storage area.").

Under controlling Supreme Court law and DOL regulations, as well as DOL's interpretation of its own regulations, Plaintiffs' compensable workday begins when they perform the first principal activity of retrieving Tyson-required PPE, tools or gear from their assigned locker. This activity is integral and indispensable to Tyson's maintenance of sanitary conditions for meat processing and required by Tyson for the production of a quality product.

Here, the undisputed factual record establishes that Plaintiffs who work in the fabrication department cannot take home or reuse their frock[1] or wear it outside the plant. A new and clean frock must be obtained from their locker and donned and worn everyday prior to entering the production floor and performing any meat processing activities on the production line. Likewise, the undisputed factual record establishes that Plaintiffs who work in the kill/slaughter department cannot take home or reuse their company-issued white shirt and pants or wear them outside the plant. A new and clean shirt and pants must be obtained from their locker and donned and worn everyday prior to entering the production floor and performing any meat processing activities on the production line.

---

[1] The frock is also sometimes referred to as a "smock."

3

Accordingly, obtaining a frock, shirt and pants, or other items of PPE from their locker constitutes the first principal activity because this activity must be performed on Tyson's premises and is pursued primarily for the employers benefit since they are all company issued and required pieces of safety gear.  See, Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 693 (1946)("donning aprons and overalls 'are clearly work' because these activities are "controlled or required by the employer and pursued necessarily and primarily for the employer's benefit.  They are performed solely on the employer's premises and are a necessary prerequisite to productive work.").

In addition to the frock or shirt and pants, Plaintiffs must collect and wear a combination of the following items on plant premises prior to performing meat processing work on the production floor:  hard hat, hair net, cotton and/or rubber gloves, cut-resistant (Kevlar material) gloves, mesh glove, hard plastic arm guards, mesh apron or belly guard, knives, a scabbard (which is a holster that holds sharp knives), and a steel (which is a tool used to keep a sharp edge on a knife).  On the production floor and prior to commencing meat processing activities, Plaintiffs are required to dip their non-fabric items (which include their arm guards, scabbards, belly guards and steels) in a sanitizing dip tank.  These activities are all compensable as part of the continuous workday because they are integral and indispensable to meat production activities.

In contravention of well-established case law, DOL's regulations and opinion letters, and DOL's enforcement actions, Tyson has continually refused to pay its workers for all actual hours of work that would include all time that each individual worker spends donning, doffing and cleaning PPE, tools and gear.  Instead, Tyson uses an illegal "gang time" payment system which only pays workers for:  (1) the time they spend working on the production line; (2) plus some

estimated or average time which Tyson has unilaterally (and incorrectly) determined to be the appropriate compensation. As a result, Tyson does not fully pay its employees for all time actually spent performing the above-described donning and doffing work activities that are performed pre- and post-shift and during their unpaid meal break.

Plaintiffs seek partial summary judgment on several of Tyson's asserted defenses in this matter. First, Plaintiffs seek partial summary judgment on Tyson's defense asserted in Paragraph 11 of its listed defenses in its Answer (**Doc. 19**) that some of the activities for which Plaintiffs seek payment are not compensable because the donning or doffing of "standard" or non-unique safety equipment is not compensable. Second, Plaintiffs seek partial summary judgment on Tyson's defense asserted in Paragraph 12 of the listed defenses in its Answer (**Doc. 19**) that the "de minimis" defense excuses their non-compliance with the FLSA.

Third, Plaintiffs seek partial summary judgment on Tyson's "good faith" defense asserted in Paragraph 8 of its listed defenses in its Answer (**Doc. 19**) that Tyson acted in "good faith" pursuant to 29 U.S.C. § 259, in conformity with the Department of Labor regulations and interpretations of the FLSA. Fourth, Plaintiffs seek partial summary judgment on Tyson's defense asserted in Paragraph 13 of the listed defenses in its Answer (**Doc. 19**) that Plaintiffs' donning and doffing activities are not compensable under the Portal-to-Portal Act, 29 U.S.C. § 254 because they are purportedly "preliminary" or "postliminary" to a principal activity.

Fifth, Plaintiffs seek partial summary judgment on Tyson's stated defense asserted in Paragraph 7 of its listed defenses in its Answer (**Doc. 19**) that Tyson acted in "good faith" pursuant to 29 U.S.C. § 260 and therefore should not be penalized with liquidated damages. Lastly, Plaintiffs seek partial summary judgment on Tyson's stated defense asserted in Paragraph

6 of its listed defenses in its Answer (**Doc. 19**) that Tyson did not "willfully deprive any person of any wages to which they may have been entitled."

In the Argument section below, Plaintiffs will establish that both the facts of this case and the law support the dismissals of those affirmative defenses.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Tyson's Lexington, Nebraska facility is a beef slaughter and processing facility that presently employs approximately 2300-2400 hourly production workers. (**Suzann Reynolds 2010 Deposition at 4**) (**excerpts of the 2010 Reynolds Deposition are attached hereto as Plaintiffs' Exhibit "B"**)

2. The two main production departments at the Lexington facility are the Kill/Slaughter department and the Fabrication department, which form the large majority of the hourly workforce and total approximately 1900 hourly workers. (**Mark Saratt Depo. at 6-7**) (**excerpts of the Saratt Deposition are attached hereto as Plaintiffs' Exhibit "C"**). Each of these departments typically run two shifts daily. Both shifts of the kill department total approximately 550 hourly workers. Both shifts of the fabrication department total approximately 1350 hourly workers. (**Saratt Depo at 6-7**)

3. The kill department (also called the slaughter floor) slaughters the cattle, removes the hide and head, removes the internal organs to be sent to the evisceration part of the floor, and sends the carcass to the cooler for cold storage. The carcass is the two "sides" of the cow which contain edible meat. (**Saratt Depo at 5-7**)

4.  The fabrication department breaks the chilled carcass[2] down into its "primal pieces" which is smaller parts such as chucks, loins and ribs, which are bagged, vacuum sealed and boxed.  Beef trimmings are ground and packaged as ground beef.  Bones and excess fat are sent to the rendering floor.  **(Saratt Depo at 5-7)**

5.  All Tyson production workers at the Lexington plant wear at least some items of personal protective equipment.  All Tyson Lexington slaughter workers are required to wear hard hats, safety glasses or some form of eye protection, ear plugs, hair net and company issued pants and shirt.  **(Bradley Comstock 2010 Depo at 27) (excerpts of the 2010 Bradley Comstock deposition are attached hereto as Plaintiffs' Exhibit "D")**.  All Tyson Lexington fabrication workers are required to wear hard hats, safety glasses or some form of eye protection, ear plugs, hair net and a company issued frock.  **(Comstock 2010 Depo at 27)**.  If fabrication workers are required to handle meat products with their hands then they must also wear cotton gloves on each hand.  **(Comstock 2010 Depo at 27-28)**.

6.  Tyson Lexington production workers wear and use some combination of the following items of PPE and tools/gear:  frocks, hard hats, ear plugs, hair nets, hard plastic arm guards, mesh aprons, back mesh (similar to a mesh apron but provides more coverage for the back), mesh sleeves or Kevlar sleeves, scabbards, cotton gloves, rubber gloves, cut-resistant (Kevlar) gloves, shin guards and mesh gloves.  **(Comstock 2010 Depo at 16-19)**.

7.  Tyson also issues knife users knives, a scabbard and chain which is a holster to hold the knives safely when not in use, and a "steel" , which is a tool used to keep a sharp edge on a knife.  **(Comstock 2010 Depo at 6-7, 23-24; Saratt Depo at 49-51)**.

---

[2] Because the fabrication department works with fresh chilled meat, the temperature in the fabrication department is kept at 45 degrees.  **(Saratt Depo at 41)**.

**8.** Many of the items of PPE are laundered by Tyson after shift and put in a laundry bag clean and hung in the lockers of the production employees. Laundered items include shirt and pants for slaughter employee, smock for fabrication employees, Kevlar gloves and Kevlar sleeves. (**Nick Albus Depo at 63) (excerpts of the Nick Albus Deposition are attached hereto as Plaintiffs' Exhibit "E")**   .

9. The remaining items that are not laundered are typically kept in the employee's locker between shifts. Such items would include (if the employee is required to use them) the plastic arm guard, the mesh apron, the knives, the scabbard, hard hats, ear plugs and mesh glove (**Albus Depo. at 63-65)**

10. Employees are permitted to take home hard hat, safety glasses, boots, their steel and their hair net. (**Comstock 2010 Depo at 5, Saratt Depo at 35-37**). Employees are not permitted to take any other items of PPE home and they must leave them in their locker between shifts. **Saratt Depo at 37-38**).

11. Tyson Lexington hourly production workers must have all required and cleaned personal protective equipment on before the first piece of meat product hits their work station. Employees are not permitted to perform work on the production line without wearing all required personal protective equipment and they are sent off the production line and potentially disciplined if they are not wearing their required PPE. (**Saratt Depo at 53-54**).

12. Tyson pays its Lexington hourly production workers in the kill and fabrication departments on a "gang time" basis. (**Reynolds 2010 Depo at 9**). "Gang time" is the time that processing lines are moving and during which production workers are physically at the assembly line while the lines are moving and producing product. (**Saratt Depo at 8-9**).

13. "Gang time" uniformly does <u>not</u> record time that production workers spend donning, doffing, and cleaning themselves and their personal protective equipment before and after line time and at unpaid meal breaks; Tyson refers to time paid for donning, doffing and related activities as "K Code" time. **(Saratt Depo. at 18-19)**

14. In addition to "gang time" Tyson currently pays its hourly production workers "extra" minutes per day (K Code time) to purportedly compensate them for donning, doffing and washing their personal protective equipment. **(Reynolds 2010 Depo at 5-7).**

15. Prior to 2007, Tyson paid its production workers four (4) minutes a day for donning and doffing their personal protective equipment if they worked in the kill or fabrication departments where at least some employees wore personal protective equipment. **(2007 Deposition of Suzann Reynolds at 15-16)(Excerpts of 2007 Reynolds Deposition are attached as Plaintiffs' Exhibit "F").**

16. In 2007, Tyson changed their system of paying K Code time to only pay workers who must wear personal protective equipment up to 14 minutes per day. However, many of the workers who used to get paid 4 minutes per day now received zero minutes of K Code time if they did not wear certain items of personal protective equipment in performing their job. **(Reynolds 2007 Depo at 20-23).**

17. The January 2007 change in payment of K-Code time stems from a 2006 "walking time" study which Tyson self-performed with its own industrial engineering department (and with no participation of the DOL). **(Jim Lemkuhl Deposition at 29-32)(Excerpts of the Lemkuhl Deposition are attached as Exhibit "G"); and (Jamie Flough Deposition at 37-38)(Excerpts of the Flaugh Deposition are attached as Exhibit "H");**

18.  In March of 2010, Tyson again changed its policy of paying for donning and doffing activities at the Lexington plant and began paying a range of 20-26 minutes a day to all hourly workers in the kill and fabrication departments.  **(Reynolds 2010 Depo at 5-7)**.

19.  Tyson admitted in a March 15, 2010 Memorandum addressed to its hourly workers that its decision to implement the new K Code policy as of March 28, 2010 was primarily in response to this lawsuit and other wage and hour lawsuits filed nationwide against Tyson.  A copy of this Memorandum is attached hereto as **Plaintiffs' Exhibit "I."**  Nowhere in the March 15, 2010 Memorandum does it say that Tyson was changing its payment practices in response to any opinion letter received from the US Department of Labor or to otherwise comply with federal or state law.

20.  In October, 2007, the wage rates at the Lexington plant for hourly production employees ranged from a starting wage of $11.30 per hour upward according to the "grade" of job performed.  **(Reynolds 2007 Depo at 46)**.

21.  Hourly workers at the Lexington plant tend to reach 40 hours a week on a weekly basis so the unpaid time sought in this lawsuit would likely be owed at an overtime.  Bradley Comstock estimated that Lexington hourly workers in the slaughter department worked approximately 40 hours per week.  **(Comstock 2010 Depo. at 15)**

22.  Production workers at Lexington get two breaks during a typical 8-hour shift. Currently, the first break is 25 minutes, five minutes of which is paid and 20 minutes of which is unpaid.  The second break is 35 minutes, five minutes of which is paid and 30 minutes of which is unpaid.  **(Reynolds 2010 Depo p. 5)**.

23.  Prior to March, 2010, the first break was a paid 15-minute break, and the second break was an entirely unpaid 30-minute break.  **(Reynolds 2010 Depo p. 5)**.

24.    During breaks, employees are required to remove all knives, scabbards and smocks and cannot bring these items into the cafeteria. (**Comstock 2010 Depo p. 16**)  Employees are required to remove almost all of their personal protective equipment, including their frock, before using the rest room.  Employees are only permitted to wear their hard hat and earplugs into the rest room.  (**Comstock 2010 Depo p. 16**)

25.    Tyson utilizes seven (7) time clocks at the Lexington facility, and there are time clocks located at the entrances of the kill and fabrication departments.  (**Comstock 2010 Depo p. 12**).

26.    Although the time clocks record the time that hourly workers punch the clock precisely to the minute, Tyson uses the time clocks only to record attendance.  (**Flaugh Depo at 31**).  Tyson does not pay its hourly employees based on the punch-in, punch-out times but rather pays its slaughter and fabrication departments on a "gang time" basis.  (**Reynolds 2010 Depo p. 9**).

## III.    SUMMARY JUDGMENT STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if there exists sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party.  Id.  The moving party bears the burden of identifying which portions of the pleadings, exhibits and discovery materials demonstrate that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving

party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials are insufficient. Id.

## IV.   ARGUMENT

### A.   The Donning And Doffing Of "Non-Unique" Personal Protective Equipment Such As Frocks And Hard Hats Are Integral And Indispensible To Plaintiffs' Work Activities And Therefore A Principal Activity That Constitutes Compensable Work.

An important issue that this Court should address is whether so-called "non-unique" or "standard" safety equipment is compensable under the circumstances of this case. Defendant Tyson has raised as an affirmative defense to Plaintiffs' claims: "All or part of the time for which plaintiffs or any proposed class members seek compensation does not constitute compensable working time." (See, Tyson's Answer And Affirmative Defenses **(Doc. 19)** Paragraph 11 of its stated defenses). Plaintiffs submit that this Court should reach the opposite conclusion: that donning and doffing "standard" safety equipment are compensable work activities because they are work activities that are "integral" and "indispensible" to the principal activity of meat processing and take place during the continuous work day.

Although not expressly stated in its Answer, Tyson's defense likely relies upon the Tenth Circuit's decision in Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994), which employers have commonly cited for the premise that the donning of "standard" or "non-unique" items of protective equipment, such as a hard hat or earplugs, are not compensable work activities. In Reich, the Tenth Circuit held that the donning and doffing of standard, non-unique protective material, such as hard hats, ear plugs, boots and safety glasses were not "work" as the FLSA is interpreted because these tasks require little concentration or effort. Id. at 1125.

12

Tyson's defense - - based upon the premise that donning and doffing "non-unique" or "standard" safety equipment is not "work" as defined by the FLSA and, therefore, is not compensable - - has been severely undermined, if not entirely eliminated, by the Supreme Court's decision in Alvarez v. IBP, 546 U.S. 21 (2005). In Alvarez, the Supreme Court stated: "The same year in Armour v. Wantock, 323 U.S. 126 [parallel cite omitted] (1944), we clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA." 546 U.S. at 25.[3]

Since Alvarez, numerous courts have cited Alvarez as support for either refusing to follow the Tenth Circuit's Reich v. IBP decision or suggesting that the Tenth Circuit would likely come to a different decision if it re-visited the same issues in light of the Alvarez decision. Following the issuance of the Alvarez decision, at least one district court in the Tenth Circuit has strongly questioned the continued viability of Reich. In Garcia v. Tyson Foods, Inc., 474 F.Supp.2d 1240 (D. Kan. 2007), the district court stated that it was:

> convinced that the [Tenth] Circuit, if given the opportunity to revisit the issues in Reich, would approach its analysis of the pertinent issues differently in light of Alvarez, regardless of whether the Circuit ultimately reached the same conclusions concerning compensability. Significantly, the Circuit did not analyze the issues through the lens of the continuous workday rule as clarified by the Supreme Court in Alvarez. In light of Alvarez, it would seem that the Circuit, if revisiting Reich today, would focus not on whether the donning and doffing constituted 'work' within the meaning of Tennessee Coal, but on whether standard protective clothing and gear are 'integral and indispensible' to the work performed by the production employees. Indeed, the Circuit in Reich, although in dicta, certainly stated that standard clothing and gear are integral and indispensible to the work performed by production employees, suggesting that the Circuit might reach a different conclusion on compensability if analyzed in the context of Alvarez.

---

[3] This clarification by the Supreme Court in Alvarez is important because the Tenth Circuit decision in Reich v. IBP primarily relied upon the Tennessee Coal v. Muscoda Local No. 123, 321 U.S. 590 (1944) case, which preceded Armour, and which Alvarez made clear was clarified by the subsequent Armour decision.

Garcia, 474 F.Supp.2d at 1246.  Also interesting, is the fact that the Tenth Circuit was presented

with an opportunity to overturn or modify the district court's decision in Garcia through an

appeal that was filed by defendant Tyson in that matter.  In Garcia v. Tyson Foods, Inc., 534

F.3d 1320 (10th Cir. 2008), the Tenth Circuit dismissed Tyson's appeal and left undisturbed the

district court's opinion.[4]

      Other post-Alvarez decisions have also assailed the viability of the Tenth Circuit's

decision in Reich v IBP.  In DeAscencio v. Tyson Foods, Inc., 500 F.3d 361 (3d Cir. 2007), the

Third Circuit rejected Reich v. IBP and concluded that the "better view" was concluding that the

time was compensable if the work activities are an integral and indispensible part of the principal

activities (relying on the 9th Circuit's decision in Ballaris v. Wacker Silitronic Corp., 370 F.3d

901 (9th Cir. 2004)).  See, DeAscencio, 500 F.3d at 371-72.  Likewise, the district court in Jordan

v. IBP, Inc., 542 F.Supp.2d 790 (M.D. Tenn. 2008), also rejected Reich v. IBP, and ruled that the

Alvarez, DeAscnecio and Ballaris decisions were all "more persuasive" than Reich.  The district

court in Chao v. Tyson Foods, Inc., 568 F.Supp.3d 1300, 1317 (N.D. Ala. 2008) also rejected

Reich calling it "non-binding and non-persuasive . . . . "  More recently, in Perez v. Mountaire

Farms, Inc., 601 F.Supp.2d 670 (D. Md. 2009), a Maryland district court also rejected Reich v.

IBP, concluding that "Reich was decided before the Supreme Court affirmed Alvarez, so its

persuasiveness is not compelling."  Perez, 601 F.Supp.2d at 678.

      If this Court agrees that the Tenth Circuit's decision in Reich v. IBP is no longer viable,

then this Court should also conclude that the donning and doffing of standard equipment is a

compensable work activity because it is a principal activity; particularly as these donning and

---

[4] The Tenth Circuit discussed at length the Garcia district court's theory regarding whether the
Tenth Circuit might reach a different result post-Alvarez, but ultimately did not squarely address
the issue of whether Reich v. IBP was still viable law in that Circuit.

doffing activities pertain to the smock, ear plugs, hard hat, aprons and cotton gloves, which are required to be obtained and donned on the premises of the Tyson Lexington plant.

In its May 31, 2006 Wage and Hour Advisory Memorandum No. 2006-2 (page 3) (**Plaintiffs' Exhibit "A"**) the DOL summarized its interpretation of the FLSA with regard to the compensability of "non-unique" gear in light of the Supreme Court's decision in Alvarez:

> The Supreme Court in Alvarez did not rule directly on the compensability of donning and doffing of "nonunique" gear such as hairnets, goggles, hard hats and smocks, because it was conceded or the courts below held that donning and doffing of the gear at issue in these cases was a principal activity. The Court, however, framed the issue to be decided as involving walking time after the donning of required gear "that the courts below found integral and indispensible to the employees' work."  In Steiner, the Court held that changing into and out of old work clothes at a battery plant was an integral and indispensible part of the workers' principal activities, and therefore compensable.  And the regulation at 29 C.F.R. 790.8 n.65 provides that any clothes changing on the employer's premises, which is required by law, the employer or the nature of the work is compensable. [footnote omitted].  The Court in Alvarez ruled that the principles enunciated in Steiner were applicable to the cases before it, and endorsed the Secretary's regulations.  Accordingly, whether required gear is "unique" or "non-unique" is irrelevant to whether donning and doffing is a principal activity.

Thus, pursuant to the Supreme Court Alvarez decision, as well as the DOL's 2006 Advisory Memorandum interpreting the law based on Alvarez, there is no longer a viable distinction between "unique" and "non-unique" equipment in terms of judging the compensability of donning and doffing such equipment.  The only relevant question is whether the donning and doffing of equipment (whether unique or non-unique) is integral and indispensable to the workers' principal work activities.

Here, it is undisputed that Plaintiffs must obtain and don their company-issued frock (if they work in fabrication) or their company-issued shirt and pants (if they work on the kill floor) and the rest of their personal protective equipment on the premises of the Lexington plant on a daily basis.  Plaintiffs cannot report to work already wearing a frock or shirt and pants and they

15

cannot re-use the prior day's dirty frock.  Accordingly, pursuant to <u>Alvarez</u> and <u>Steiner v.</u>

<u>Mitchell</u>, 350 U.S. 247 (1956), since the frock, shirt and pants and other PPE must be donned on

the premises of the employer prior to the start of the shift, it is integral and indispensable to the

Plaintiffs' principal activities; and the act of donning the frock or shirt and pants is compensable

and starts the continuous workday, and the act of doffing the frock or shirt and pants is also

compensable and occurs within the course of the continuous workday.  This Court should

therefore grant Plaintiffs partial summary judgment on Tyson's affirmative defense asserting that

time spent donning and doffing "standard" safety equipment is not a compensable work activity.

### B.   Tyson Cannot Rely Upon A <u>De Minimis</u> Defense

In its Answer, Tyson asserts:  "All or part of the claims are barred under the <u>de minimis</u>

doctrine."  (See, Tyson's Answer And Affirmative Defenses **(Doc. 19)** (Paragraph 12 of stated

defenses).  Plaintiffs will establish below that Tyson cannot establish a <u>de minimis</u> defense as a

matter of law.

The Supreme Court has previously recognized that employers do not need to pay

employees for otherwise compensable time if that time is "<u>de minimis</u>."  <u>Anderson v. Mt.</u>

<u>Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946)("When the matter at issue concerns only a few

seconds or minutes of work beyond the scheduled working hours, such trifles may be

disregarded.")  Pursuant to the DOL's implementing regulation, the narrow "<u>de minimis</u>"

exception "applies <u>only</u> where there are uncertain and indefinite periods of time involved of a

few seconds or minutes duration, and where failure to count such time is due to considerations

justified by industrial realities."  29 C.F.R. 785.47 (emphasis added).  If it is feasible for the

employer to record the time, then the employer cannot escape liability for paying its employees

for this time by relying on the <u>de minimis</u> rule.  <u>See Id.</u> ("An employer may not arbitrarily fail to

count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.").

Courts generally weigh three factors in determining whether a claim is too small for recovery and de minimis: (1) the practical administrative difficulty in recording the time, (2) the size of the aggregate claim, and (3) the regularity of the additional work. Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984). None of these factors provide any support whatsoever to Tyson's claimed de minimis defense.

There is no practical administrative difficulty at all in capturing the time Plaintiffs spend donning, doffing and washing/sanitizing their personal protective equipment, and Tyson's management employees have essentially admitted this. It is undisputed that Tyson has time clocks throughout the Lexington plant where all hourly workers are required to swipe a card that records the time Tyson employees clock in and out each day for attendance purposes.

A basic principle under the FLSA is that employers are responsible for the recording of work time. As the Supreme Court observed in Mt. Clemens, "it is the employer who has the duty under § 11 of the Act [29 U.S.C. § 211(c)] to keep proper records of wages, hours and other conditions and practices of employment." 328 U.S. at 687. Accordingly, the employer must structure its operations in a manner that permits the accurate recording of this time. Here, Tyson's failure to accurately record the time the Plaintiffs spend donning, doffing, washing, sanitizing and performing preparatory activities is inexcusable given that Tyson could have moved its time clocks to a position near its locker rooms where the first and last compensable work activities are performed. Because Defendant Tyson has time clocks with the ability to record all time (to the minute), it is administratively feasible for Tyson to record the time its

17

employees spend on the donning and doffing (and related) activities in dispute in this case. Therefore, Tyson cannot rely on the <u>de minimis</u> defense to avoid paying for these compensable work activities.

The size of the aggregate claim factor also weighs heavily in favor of Plaintiffs and against permitting Tyson to assert a <u>de minimis</u> defense. As the <u>Lindow</u> second factor makes clear, the <u>de minimis</u> defense does not apply separately to each particular activity viewed in isolation. A <u>de minimis</u> determination instead requires consideration of the aggregate amount of time for which an employee seeks compensation. See, <u>Alvarez</u>, 546 U.S. at 39; <u>Lindow</u>, 738 F.2d at 1063;  <u>see also</u>, DOL Wage Hour Advisory Memorandum, 2006-2, at p. 3.  (**Plaintiffs' Exhibit "A"**).

Here, the size of Plaintiffs' aggregate claim is enormous since it involves work activities that are performed every single work day, before and after every shift, for over 450 Plaintiffs who have opted in to the case, for a time period going back as far as 2003.  Plaintiffs' aggregate claims for uncompensated time cannot be considered <u>de minimis</u> under any definition of that term.

Moreover, the time Plaintiffs spend donning and doffing cannot be deemed <u>de minimis</u> because these activities occur regularly each work day.  The <u>de minimis</u> rule does not apply where the activities at issue are regular, recurring events that employees perform each and every day.  See <u>Kosakow v. New Rochelle Radiology Associates, P.C.</u>, 274 F.3d 706, 719 (2d Cir. 2001)(no <u>de minimis</u> defense where employee needed to arrive 15 minutes early each day). Thus, Tyson's <u>de minimis</u> defense fails on this ground as well, and this Court should therefore grant Plaintiffs partial summary judgment on Tyson's "<u>de minimis</u>" defense and hold that this doctrine does not excuse Tyson's non-compliance with the Fair Labor Standards Act.

Defendant Tyson will likely argue that this Court should not grant summary judgment because there are disputed facts in play and other courts have sometimes refrained from granting summary judgment on the de minimis defense.  Plaintiffs disagree with this premise.  The crucial factor which entirely undermines Tyson's de minimis defense is the consideration of the practical administrative difficulty in recording the time.  One of the leading cases on de minimis was decided in the neighboring Northern District of Iowa and involved the same types of donning and doffing issues in a meatpacking plant that are at issue here.

In Saunders v. John Morrell & Co., 1992 WL 531674 (N.D. Iowa 1992), that court was tasked with deciding whether the time spent by John Morrell meat packing employees cleaning their safety equipment was de minimis as a matter of law and, therefore, not compensable.

The Saunders court concluded that the de minimis doctrine did not apply because the Saunders court ruled **as a matter of law** that John Morrell could have calculated the time employees spent performing this work but simply refused to do so:

> The Court is not persuaded that the plaintiffs' claims involve amounts of time that are so uncertain or so indefinite that the failure to count the time is justified by industrial realities as a matter of law. Id. [29 C.F.R. § 785.47]  Plaintiffs are required to clean safety equipment every day as part of their assigned duties.  An employee's failure to clean equipment is sanctionable. "An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." Id. [29 C.F.R. § 785.47]  The Court is not persuaded that Morrell cannot calculate the amount of time its employees spend cleaning safety equipment in this day of technology.  Id.  Plaintiffs' claims are not de minimis as a matter of law.

Saunders, 1992 WL 531674 * 2.  It should be noted that Saunders was decided almost 18 years ago (October 1992) and Judge O'Brien stated that "in this day of technology" the company should be able to calculate the amount of time its employees spent performing work tasks.  This

conclusion should apply a fortiori now, nearly 18 years later, with all of the technology in workplaces in the year 2010.

Tyson's recent admission of liability through its decision in March 2010 to start paying 20-26 minutes per day to all of its production employees for the precise donning and doffing activities that are contested in this matter also clarifies that the de minimis doctrine cannot possibly apply here.

### C.   Tyson Cannot Establish A "Good Faith" Defense Pursuant To 29 U.S.C. § 259.

Defendant Tyson asserts in its Answer to Plaintiffs' Complaint: "The plaintiffs and other proposed class members are not entitled to any recovery because any alleged acts or omissions were made by defendants in good faith conformity with and reliance upon applicable administrative regulation, order, ruling, approval or interpretation, or administrative practice or enforcement policy with respect to the class of employers to which defendant belongs." (See, Tyson's Answer and Affirmative Defenses **(Doc. 19)** (Paragraph 8 of its stated defenses).

Under 29 U.S.C. § 259(a), employers may establish a "good faith" defense to liability for violations of the FLSA if they plead and prove that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in [Section 259](b).[5]  Hultgren v. County of Lancaster, 913 F.2d 498 (8th Cir. 1990).  The Ninth Circuit summarized the employer's burden of proof as:  "To be insulated from liability under § 259's good faith exception, an employer must show it acted (1) in good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter."  Alvarez v. IBP,

---

[5] In the case of the FLSA, subdivision (b) provides that the "agency" is "the Administrator of the Wage and Hour Division of the Department of Labor."  Hultgren, 913 F.2d at 507.

Inc., 339 F.2d 894, 907 (9th Cir. 2003).  "The employer bears the burden of proof to establish

[the § 259(a)] exception."  Alvarez, 339 F.3d at 907.

Under the good faith reliance defense, Defendant Tyson's "burden is a heavy one," Luna-

Guerrero v. The North Carolina Growers Ass'n, Inc., 370 F. Supp. 2d 386, 391 (E.D.N.C. 2005).

At the summary judgment stage, the good faith reliance defense will fail if issues of material fact

exist concerning Defendant's good faith or actual reliance on the administrative ruling.  See,

Bayles v. American Med. Response, 937 F. Supp. 1477, 1489 (D. Colo. 1996).

As discussed below, Defendant cannot satisfy its heavy burden of proving any of the

three requirements of the good faith reliance defense.

### 1.    Defendant Tyson Cannot Prove Actual Reliance

The good faith reliance defense applies only if Tyson "actually relied upon" an

administrative ruling of the DOL.  See 29 C.F.R. § 790.16(a); Luna-Guerrero, 370 F. Supp. 2d at

391.  Indeed, "the purpose of [the defense] was to provide a defense for an employer who pleads

and proves, among other things, that his failure to bring himself under the [FLSA] 'grew out of

reliance upon' the ruling of an agency."  29 C.F.R. § 790.16(a) n. 101.  Section 259's legislative

history indicates Congress intended the defense to apply where employers innocently, and to

their detriment, follow the law as interpreted by a government agency, without notice that the

agency's interpretation was invalid or in error.  Hultgren, 913 F.2d at 507.  The defense is

essentially an estoppel defense to protect employers from an agency's mistakes in statutory

interpretation.  Id.

Here, the record at the close of discovery provides no evidence at all that Tyson's

donning and doffing payment policies - - of not recording time spent on donning and doffing

activities and not paying workers "actual" time spent performing these activities, but rather

paying employees a certain number of minutes per day (a range of 4-8 minutes per day) based on whether they use a knife and what PPE they wear - - are based upon any "reliance on any written administrative regulation, order, ruling, approval, or interpretation", of the DOL Wage and Hour Administrator.  To the contrary, Tyson's March 15, 2010 Memorandum to its hourly employees **(Plaintiffs' Exhibit "I")** makes no mention whatsoever that its current "K-Code" policy is based upon any DOL agency interpretation or policy.  The  March 15, 2010 Memorandum expressly states that the new policy was implemented in response to numerous wage and hour lawsuits (including the matter at bar) that were filed nationally against Tyson.

The January 2007 change in payment of K-Code time also provides no evidence at all that Tyson's donning and doffing payment policies - - of not recording time spent on donning and doffing activities and not paying workers "actual" time spent performing these activities, but rather paying employees a certain number of minutes per day (a range of 0-14 minutes per day) based on whether they use a knife and what PPE they wear - - are based upon any "reliance on any written administrative regulation, order, ruling, approval, or interpretation", of the DOL Wage and Hour Administrator.  To the contrary, Tyson's corporate representatives testified that the January 2007 change in payment of K-Code time stems from its own unilateral response to a 1998 time study of putting on and taking off equipment in connection with a 2006 "walking time" study, both of which Tyson self-performed with its own industrial engineering department (with no participation of the DOL).  **(Lemkuhl Depo at 29-32)**; and **(Flough Depo at 37-38)**.

Therefore, given that Tyson's payment policies, at least since January 2007, have no connection at all with or reliance upon an applicable administrative regulation, order, ruling, approval or interpretation, or administrative practice or enforcement policy, Defendant Tyson cannot assert a good faith defense under Section 259.

### 2.    Defendant Cannot Prove Good Faith

Under the defense, "good faith" requires that the employer have "no knowledge of circumstances which ought to put him upon inquiry." 29 CFR 790.15(a).  When legal developments "cast doubt on the correctness" of DOL opinions or rulings, the defense is lost.  Id. at 790.15(b).  Good faith is lacking "where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him."  Id. at 790.15(d) n. 99; see Alvarez, 339 F.3d at 907 (citing Keeley, 183 F.3d at 271); EEOC v. Home Ins. Co., 672 F.2d 252, 265 (2d Cir. 1982); Mascol v. E&L Transp., Inc., 387 F. Supp. 2d 87, 100 (E.D.N.Y. 2005).  Moreover, as observed by the Third Circuit, "good faith is absent when the employer fails to investigate a law's requirements, or simply relies on a longstanding practice (of either the employer itself or its industry) of failing to pay overtime or on union acquiescence in such failure."  Keeley v. Loomis Fargo Co., 183 F.3d 257, 271 (3d Cir. 1999).

At the very least, the Supreme Court's decision in Alvarez in October of 2005 should have put Tyson in a position to seek guidance from the Department of Labor Wage and Hour Division about its payment practices.  Instead, in response to Alvarez, Tyson ignored this process of seeking guidance from the DOL and unilaterally conducted its own carefully orchestrated time study, which actually excluded from consideration many compensable work tasks such as waiting time during the continuous work day.  Accordingly, Tyson cannot establish good faith.

### 3.    Defendant Cannot Prove Conformity

As far back as January 15, 2001, the DOL informed meat packing companies that they were not permitted to pay workers for donning and doffing activities based upon an "average" amount of time.  Instead, DOL mandated that meat packing companies must pay all individual

employees for the <u>actual</u> time they spend performing donning and doffing activities.

Specifically, the DOL stated in its January 15, 2001 Advisory Memorandum (page 2)

> Also, a number of meatpacking companies have asked the Department if it would be permissible to pay employees wages based on an average amount of time that all employees work.  I would like to reiterate that in order to comply with the FLSA and its implementing regulations (see 29 C.F.R. 516.2), **a company must record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear.**

(emphasis added) (This January 15, 2001 Memorandum is attached hereto as **Plaintiffs' Exhibit "J"**).

Accordingly, Tyson's practice of paying workers an "average" time for donning and doffing activities is not in conformity with DOL's interpretation of the FLSA.  Moreover, Tyson cannot point to any DOL opinion letter, regulation or interpretation, which provides approval for Tyson's "average time" payment scheme.

Summarily, Tyson cannot establish any of the three elements necessary to establish a "good faith" defense under 29 U.S.C. § 259.  Therefore, this Court should therefore grant Plaintiffs partial summary judgment on Tyson's good faith defense (Paragraph 8 of its listed defenses in its Answer) asserting that its actions were taken in good faith within the meaning of 29 U.S.C. § 259.

 **D.** **Tyson Cannot Establish A Portal-to-Portal Defense Pursuant To 29 U.S.C. § 254(a) Because The Supreme Court Has Already Ruled In <u>Alvarez</u> That Donning And Doffing Of Required Protective Equipment Is Integral And Indispensible To The Principal Activity Of Meat Processing And Is Therefore Itself A Principal Activity.**

Defendant Tyson asserts in its Answer:  "All or part of the time for which plaintiffs seek compensation is noncompensable under the Portal-to-Portal Act, 29 U.S.C. § 254."  (See, Tyson's Answer And Affirmative Defenses **(Doc. 19)** (Paragraph 13 of its stated defenses).

This defense is easily dispensed with just by looking at the discussion of the Portal-to-Portal Act within the Supreme Court's decision in Alvarez.  The Alvarez decision contains a lengthy discussion of the Portal-to-Portal Act generally, and of 29 U.S.C. §254(a)'s exception for activities which are "preliminary" or "postliminary" to a principal work activity.  See, 546 U.S. at 26-33.  Specifically, the unanimous Supreme Court in Alvarez reiterated its long-held view that any activity that is integral and indispensable to a principal activity is itself a principal activity, and therefore, compensable under the FLSA.  Alvarez, 546 U.S. at 37.  As applied to the meat processing industry, the Supreme Court specifically held that the donning and doffing of required sanitary and safety equipment is integral and indispensable to meat processing workers' principal work activities, and that such activities were compensable and commenced and concluded the continuous workday.  Alvarez, 546 U.S. at 32-33.

The Supreme Court's decision in Alvarez is controlling on this question, and Tyson cannot present any evidence that would distinguish Alvarez.  It is undisputed that Tyson production workers at the Lexington plant must obtain and don most or all of their personal protective equipment on site at the plant prior to entering the production floor and performing any meat processing activities.  Many of the items of PPE are laundered by Tyson after shift and put in a laundry bag clean and hung in the lockers of the production employees.  The remaining items that are not laundered are kept in the employee's locker between shifts.  Such items would include (if the employee is required to use them) the plastic arm guard, the mesh apron, the knives, the scabbard, hard hats, ear plugs, mesh sleeves.  Employees are not permitted to take most of their items of PPE home, they must leave them in their locker between shifts.

Accordingly, based on Alvarez, this Court should conclude that the donning and doffing of protective equipment at Tyson's Lexington plant is a "principal activity" in the meat

processing job and, therefore, time spent on these activities is compensable pursuant to the

FLSA. As a result, this Court should, therefore, grant Plaintiffs partial summary judgment on

Tyson's defense (Paragraph 13 of its stated defenses) asserting that Plaintiffs' donning and

doffing work activities are not compensable pursuant to the Portal-to-Portal Act, 29 U.S.C. §

254(a), because they are "preliminary" or "postliminary" to a principal activity.

E.     **Tyson Cannot Establish A Good Faith Defense To Plaintiffs' Claims For Liquidated Damages Pursuant To 29 U.S.C. § 260.**

Defendant Tyson asserts in its Answer: "The plaintiffs and other proposed class

members are not entitled to recover liquidated damages or penalties because defendant at all

times acted in good faith and with reasonable grounds for believing that it had not violated the

FLSA, the Nebraska Wage and Hour Act, or the Nebraska Wage Payment and Collection Act."

(See, Tyson's Answer And Affirmative Defenses (**Doc. 19**) Paragraph 7 of its stated defenses).

Under the FLSA, an employer in violation of the statute "shall be liable to the employee

or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages." 29

U.S.C. § 216(b). However, a court "in its sound discretion" may reduce the amount of liquidated

damages if an employer "shows to the satisfaction of the court that the act or omission giving

rise to such action was in good faith and that he had reasonable grounds for believing that his act

or omission was not a violation of [FLSA]." 29 U.S.C. § 260.

To demonstrate that a good faith reduction in liquidated damages is appropriate, an

employer must demonstrate that the violation was "both in good faith and predicated upon such

reasonable grounds that it would be unfair to impose [liquidated damages]. Elwell v. Univ.

Hosp. Care Service, 276 F.3d 832, 840 (6th Cir. 2002). This burden is "substantial," and unless

an employer carries this burden, a district court lacks power or discretion to reduce liquidated damages for an employer found liable for violating FLSA. Id.

The notion that Tyson Foods/Fresh Meats of all meatpacking companies is claiming "good faith" compliance with the Fair Labor Standards Act borders on laughable. As the predecessor to IBP, Tyson Foods litigated the Alvarez case all the way to the United Supreme Court. And lost. The Supreme Court's ruling in Alvarez occurred in 2005, several months before this lawsuit was filed. In response to losing the Alvarez case, Tyson made minimal, if any, changes to the way that it paid its workers for donning, doffing and washing their personal protective equipment. As a result, there are multiple lawsuits filed against Tyson regarding both their chicken and fresh meat operations that are too numerous to list here. There are three lawsuits just before this Court (including this one) claiming the same violations of the FLSA that were claimed in Alvarez.

The Jordan v. IBP, Inc. decision in the Middle District of Tennessee, cited previously, aptly describes IBP's/Tyson's checkered past in terms of failure to comply with the Fair Labor Standards Act:

> This case represents yet another chapter in a long history of litigations that span multiple for a, all of which involve one or both of the defendants here [IBP and Tyson Foods] and the question of whether their compensation practices violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. These defendants, individually or collectively, have now been litigating this same issue for decades, reflecting what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of the FLSA. Most notably, beginning in 1988, the Department of Labor brought suit against IBP in the U.S. District Court for the District of Kansas (the "DoL Litigation"), which culminated in the issuance, in July 1996, of a company-wide permanent injunction requiring IBP to comply with the overtime and record keeping provisions of the FLSA. See Garcia v. Tyson Foods, Inc., 474 F.Supp.2d 1240, 1242-43 (D. Kan. 2007)(discussing history of DoL Litigation).

27

See, Jordan v. IBP Inc., 542 F.Supp. 2d 790, at 794.

Tyson's litigation history, both in its own right and as the predecessor to IBP, shows blatant non-compliance with the FLSA and DOL's attempts to enforce the FLSA. The Court should reject Tyson's brazen attempt to claim innocent "good faith" compliance with the FLSA.

> **F.** **For The Same Reasons That Tyson Cannot Establish A Good Faith Defense To Plaintiffs' Claims For Liquidated Damages Pursuant To 29 U.S.C. § 260 This Court Should Also Conclude That Tyson's Acted Willfully In Refusing To Pay Plaintiffs For Time Spent In Donning, Doffing And Related Activities.**

Defendant Tyson asserts in its Answer: "Defendant did not willfully deprive any person of any wages to which they may have been entitled." (See, Tyson's Answer And Affirmative Defenses **(Doc. 19)** (Paragraph 6 of its stated defenses).

For the purposes of adding one year to the statute of limitations for violation of the FLSA, a violation of the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA. Brock v. Richland Shoe Co., 799 F.2d 80 (3d Cir. 1986), cert. granted, 484 U.S. 813, affirmed, 486 U.S. 128 (1998). Willfullness as defined by 29 U.S.C. § 255 does not demand proof that employer entertained bad purpose or evil intent. Laffey v. Northwest Airlines, Inc., 567 F.2d 429 (D.C. Cir. 1976), cert denied, 434 U.S. 1086.

Applying the concept of willfulness to the matter at bar, Plaintiffs cannot imagine a scenario more ripe for a finding that Tyson (formerly IBP) acted willfully in refusing to fully pay its hourly workers for donning and doffing and related activities. Tyson litigated many of the same issues that are now before this Court all the way to the US Supreme Court in the Alvarez matter discussed above and lost on almost all of those issues. Following the outcome in Alvarez, Defendant Tyson had ample time and opportunity to radically change its payment practices.

Instead it took baby steps such as the steps taken in January 2007 (more than a year after <u>Alvarez</u> was decided) which slightly increased donning and doffing pay for a few employees but actually decreased to zero donning and doffing pay for many other employees. If Tyson in early 2006 had taken the steps that it ended up taking in March 2010, it might be able to say that it reacted to Alvarez in a timely fashion and significantly increased payment for donning and doffing activities. Instead, Tyson waited at least four years too long to implement any substantial changes to its donning and doffing payment policies. Accordingly, this Court should conclude that Tyson acted willfully in depriving Plaintiffs of wages owed to them.

## V.    CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully requests that this Court grant partial summary judgment in favor of Plaintiffs upon the stated defenses raised in Paragraphs 6, 7, 8, 11, 12, and 13 of Defendant Tyson's August 24, 2006 Answer And Affirmative Defenses **(Doc. 19)**.

Respectfully submitted,

/s/ Brian P. McCafferty

BRIAN P. MCCAFFERTY
Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327 (phone)
(610) 940-0284 (fax)
cafstar@aol.com

MICHAEL HAMILTON
Provost Umphrey Law Firm, LLP
2021 Richard Jones Road, Suite 300
Nashville, TN 37215
Phone:  (615) 242-0199
Facsimile:  (615) 256-5922
E-mail:  mhamilton@provostumphrey.com

ROGER K. DOOLITTLE
460 Briarwood Drive, Suite 500
Jackson, MS 39206
Phone:  (601) 957-9777
Facsimile:  (601) 957-9779
E-mail:  rogerkdoolittle@aol.com


Attorneys for Plaintiffs

Dated:  September 1, 2010

## CERTIFICATE OF SERVICE

I, Brian P. McCafferty, hereby certify that on September 1, 2010, I electronically filed the foregoing Plaintiffs' Memorandum Of Law In Support Of Their Motion For Partial Summary Judgment with the Clerk of Court using the CM/ECF system which sent notification of such to the following counsel for Defendant Tyson pursuant to the ECF System:

> Steven D. Davidson, Esq.
> Michael J. Mueller, Esq.
> Alison D. Balus, Esq.
> Evangeline Paschal, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

> None.

/s/ Brian P. McCafferty

Brian P. McCafferty

Dated: September 1, 2010

31