IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
DIMAS LOPEZ, et al.,          )
individually and on behalf of )
a class of others similarly   )
situated,                     )
                              )
              Plaintiffs,     )          8:06CV459
                              )
         v.                   )
                              )
TYSON FOODS, INC.,            )          MEMORANDUM AND ORDER
                              )
              Defendant.      )
_____)
```

Plaintiffs, current and former production hourly
employees of defendant's Lexington, Nebraska, meat processing
facility, bring this action against defendant on behalf of
themselves and others purported to be part of a class alleging
violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.
§ 201 et seq., the Nebraska Wage and Hour Act ("Wage and Hour
Act"), Neb. Rev. Stat. §§ 48-1201-1209, and the Nebraska Wage
Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228-
1232.  Specifically, plaintiffs claim defendant has failed to pay
plaintiffs their minimum hourly rate of pay for all hours of work
they performed in addition to overtime, as required by Nebraska
and/or federal law.  The uncompensated time includes, but is not
limited to, time (before and after paid time, and during both
breaks and meal periods) spent preparing, donning, doffing, and
sanitizing sanitary and safety equipment and clothing, obtaining
tools, equipment and supplies necessary for the performance of

plaintiffs' work, and all other activities in connection with these job functions (including related walking and waiting time).

This matter is before the Court on plaintiffs' motion for partial summary judgment (Filing No. 181) and defendant's motion for summary judgment on plaintiffs' state law claims and partial summary judgment on plaintiffs' FLSA claims with respect to compensation for activities performed during the meal period (Filing No. 185).  Plaintiffs seek summary judgment on several of defendant's asserted defenses in this matter, claiming (1) defendant is not entitled to a defense asserting that some of the activities for which plaintiffs seek payment are noncompensable because these activities do not constitute "work" and/or these activities are not integral and indispensable to a principal activity under the Portal-to-Portal Act, 29 U.S.C. § 254 ; (2) defendant is not entitled to a "de minimis" defense excusing their non-compliance with the FLSA; and (3) defendant is not entitled to a defense alleging it did not "willfully" deprive plaintiffs of any wages or any "good faith" defense or "good faith" reduction in liquidated damages.  Defendant, in turn, asserts plaintiffs' claim brought pursuant to the FLSA for compensation for activities plaintiffs perform during their meal period should be dismissed because plaintiffs receive the predominate benefit of their meal period and/or because these activities are "de minimis."  Defendant also claims plaintiffs'

-2-

two state law claims should be dismissed because plaintiffs' own evidence is insufficient to support a violation of either law.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Defendant Tyson Foods, Inc. (hereinafter "Tyson" or "defendant") is a Delaware corporation that operates numerous beef and chicken processing facilities located throughout the United Sates, including a beef processing facility in Lexington, Nebraska.  The Lexington, Nebraska, beef slaughter and processing facility is operated by Tyson's wholly-owned subsidiary, Tyson Fresh Meats, Inc.  Tyson's Lexington, Nebraska, facility presently employs approximately 2300-2400 hourly production employees.  Plaintiffs are current and former hourly production employees at the Lexington facility, and they work or worked in one of the two main production departments at the Lexington facility, namely the Slaughter department or the Fabrication department.

Tyson's hourly production employees cannot enter the Slaughter department or the Fabrication department unless they are wearing certain clothing or gear.  All production employees, regardless of department, are required to wear a hard hat, safety glasses or some form of eye protection, earplugs, and a hairnet. Production employees in the Slaughter department are also required to wear company-issued pants and shirt.  Production employees in the Fabrication department are also required to wear

-3-

a company-issued frock.  If employees in the Fabrication
department are required to handle meat products with their hands,
they must also wear cotton gloves on each hand.  Employees who
utilize knives in connection with their specific positions are
required to wear additional "unique" or "specialized" clothing
and gear.  In addition, some employees choose to wear or utilize
certain clothing or gear not required for their positions.

Tyson pays the majority of its Lexington hourly
production employees in the Slaughter and Fabrication departments
on a "gang time" basis.  Gang time represents the time that
plaintiffs are physically at the assembly line while the
production lines are moving and producing product.  Gang time is
approximately eight hours per shift.[1]  Production employees get
two breaks during a typical eight-hour shift:  one for a meal
period and one for a rest break.[2]  During these breaks,
production employees are free to leave the production areas.

Beyond gang time, Tyson pays additional minutes to
certain employees coded separately in Tyson's payroll under a "K

---

[1] Although plaintiffs punch in at one of Tyson's seven time
clocks as they enter the Slaughter or Fabrication departments at
the Lexington facility, Tyson typically uses these time clocks
only to record attendance, not actual hours worked.  The time
clocks, however, are used for pay purposes if employees arrive
after the start of paid time for their line.

[2] Prior to March 2010, the rest break was a paid 15-minute
break, and the meal period was an entirely unpaid 30-minute
break.

code." K code time refers to the minutes intended to pay
plaintiffs for certain donning, doffing, washing, walking,
waiting, and related activities they perform before and after the
shift and during breaks. As Tyson does not keep track of the
"actual" time plaintiffs spend on such activities, K code time
represents an average time spent on such activities.
Furthermore, Tyson has routinely changed the amount of K code
time paid to Lexington employees and the eligibility requirements
for K code time in response to longtime, ongoing litigation
initiated by the Department of Labor against Tyson's predecessor,
Iowa Beef Processors, Inc. ("IBP").

In 1988, the Secretary of Labor brought an action
against IBP and all of its non-union facilities for pre- and
post-shift time spent on clothing issues. After twelve years and
four published opinions, and a negotiated settlement, the case
resulted in a permanent and nationwide injunction, dictating that
pre- and post-shift activities related to donning and doffing
unique or specialized protective clothing and gear worn by knife-
wielding employees must be compensated by IBP. *Reich v. IBP,
Inc.*, No. 88-2171-EEO, 1996 WL 445072 (D. Kan. July 30, 1996),
*aff'd, Metzler v. IBP, Inc.*, 127 F.3d 959 (10th Cir. 1997). As a
consequence of these cases and a settlement in *Herman v. IBP,
Inc.*, No. 98-CV-2163-JWL (D. Kan. April 10, 1998), knife-wielding
employees received pay for an extra four minutes per shift in

-5-

addition to gang time from IBP.  The four minutes was calculated
based on a time study performed by IBP and became what is known
as K code time.

Years later, "[a]fter the Supreme Court's decision in
*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), in which the [Supreme
Court] held that walking time is compensable if it follows or
precedes a principal working activity, Tyson conducted a time
study to determine the number of minutes required for certain
pre- and post-shift walking time within [its] facilities."
*Garcia v. Tyson Foods, Inc.*, No. 2:06-CV-02198, 2001 U.S. Dist.
LEXIS 10290, at *32 (D. Kan. January 31, 2011).  As a result,
Tyson[3] again modified its K code policy.  From January 29, 2007,
to March 28, 2010, Tyson paid knife-wielding plaintiffs working
at the Lexington plant -- based upon the amount of equipment they
wore in the job they performed -- between four and seven minutes
per day in addition to gang time.  Tyson intended these four to
seven minutes to compensate employees for certain donning,
doffing, washing, walking, waiting and related activities they
performed before and after the shift.  The number of minutes was
calculated based on the original four-minute time study performed
by IBP in 1998, plus a walking time study performed by Tyson in
2006.  Some class members, however, were not paid for any minutes
in addition to gang time between January 29, 2007, and March 28,

---

[3] IBP became Tyson in 2003.

2010, because they were non-knife-wielding employees who wore minimal equipment for their jobs.

In response to this lawsuit in Nebraska and other wage and hour lawsuits filed nationwide against Tyson, Tyson implemented a new K code policy once again. As of March 29, 2010, Tyson has paid all plaintiffs working at the Lexington plant at least 20 minutes in addition to gang time. Tyson intends these 20 minutes to compensate employees for certain donning, doffing, washing, walking, waiting, and related activities they perform before and after the shift and during each of their two breaks.[4] Some employees are also paid one to six additional minutes on top of the 20 minutes based on the amount of equipment they wear for their job. The number of minutes now paid is based, in part, on the original four-minute time study performed by IBP and the walking time study performed by Tyson.

Here, plaintiffs seek compensation for any unpaid, "actual" time (before and after paid time, and during both breaks and meal periods) spent preparing, donning, doffing, and sanitizing sanitary and safety equipment and clothing, obtaining tools, equipment and supplies necessary for the performance of

_____

[4] Currently, the first break is 25 minutes, five minutes of which is paid and 20 minutes of which is unpaid. The second break is 35 minutes, five minutes of which is paid and 30 minutes of which is unpaid and utilized as a meal period.

-7-

their work, and all other activities in connection with these job functions for which Tyson does not already compensate them.[5]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

---

[5] The trial court in the *Reich* litigation also held that the donning and doffing of standard (non-unique) clothing and gear worn by all production employees was not compensable, and the Tenth Circuit affirmed the court's holding.  *See Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994).  Here, plaintiffs seek compensation for the donning and doffing of both "standard" and "unique" clothing and gear.  In defendant's previous motion for summary judgment (Filing No. 29), this Court noted the Supreme Court's decision in *Alvarez* has arguably changed the legal test on these issues such that plaintiffs' claims related to standard protective clothing and gear are no longer barred by *Reich*.  *See* Mem. and Order dated Mar. 20, 2007, slip op. at 6 (Filing No. 56).

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial.  *Id.* at 324.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Id.* at 249-52 (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *Id.* at 250-51.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc.*, 347

-9-

F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for
summary judgment, a court must not weigh evidence or make
credibility determinations."  *Id.*  "Where the unresolved issues
are primarily legal rather than factual, summary judgment is
particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.,*
371 F.3d 394, 396 (8th Cir. 2004).

**III. DISCUSSION**

This Court will first address plaintiffs' partial
motion for summary judgment on defendant's affirmative defense.
It will then consider defendant's partial motion for summary
judgment on plaintiffs' meal period claims, as well as
defendant's motion for summary judgment on plaintiffs' state law
claims.

**A. Defendant's Affirmative Defense Nos. 11 and 13**

Plaintiffs ask this Court to deny defendant the ability
to bring affirmative defenses alleging that the donning and
doffing of standard (non-unique) clothing or gear[6] is
noncompensable either because it is not "work" or because it is

---

[6] Throughout their briefing, plaintiffs mention various
"unique" items, such as mesh or Kevlar sleeves, mesh gloves, cut-
resistant (Kevlar) gloves, hard plastic arm guards, mesh aprons,
back mesh, scabbards, and steel.  Defendant does not dispute as
to the compensability of these items because they are subject to
the *Reich* injunction and defendant has been paying for the
donning and doffing of these items.  The only issues remaining
for these items involve whether plaintiffs have been/are or
should be compensated for the "actual" time they spend completing
such activities.

considered noncompensable under the Portal-to-Portal Act, 29
U.S.C. § 254.  *See* defendant's affirmative defense Nos. 11 $ 13
(Filing No. 19).  During the *Reich* litigation, the trial court
held that the donning and doffing of standard (non-unique)
protective clothing and gear worn by production employees was
noncompensable.  The Tenth Circuit affirmed the court on this
issue, holding that the donning and doffing of standard (non-
unique) clothing and gear cannot constitute "work" under the FLSA
because these tasks require little exertion, concentration and/or
effort pursuant to the Supreme Court's decision in *Tennessee Coal
v. Muscoda Local No. 123*, 321 U.S. 590 (1944).  *See Reich v. IBP,
Inc.*, 38 F.3d 1123, 1125 (10th Cir. 1994).  Defendant
acknowledges that this Court expressed the view that the Supreme
Court's test in *Alvarez* deviated from the *Reich* and *Tennessee
Coal* analysis.  *See* Mem. and Order dated Mar. 20, 2007, slip op.
at 6 (Filing No. 56), and the Court reaffirms its previous
holding.  In *Alvarez*, the Supreme Court provided "that 'exertion'
was not a fact necessary for an activity to constitute 'work'
under the FLSA," 546 U.S. at 25.  Thus, defendant will be denied
the ability to bring an affirmative defense alleging that the
donning and doffing of standard (non-unique) clothing or gear is
noncompensable because it is not "work" pursuant to the *Reich* and
*Tennessee Coal* analysis.  This Court's decision on this issue is
of little significance however, because, as defendant has argued,

-11-

there remains an issue of material fact as to whether the donning and doffing of standard (non-unique) clothing or gear is compensable under the Portal-to-Portal Act, 29 U.S.C. § 254.

The Supreme Court further provided in the *Alvarez* decision that any activity that is integral and indispensable to a principal activity is itself a principal activity, and therefore, compensable under the FLSA.  546 U.S. at 37.  In analyzing whether the donning and doffing of standard (non-unique) clothing and gear is an activity which is integral and indispensable to a principal activity, district courts have adopted a three-part test which this Court incorporates here. This Court must analyze:  "(1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer."  *See In re Tyson Foods, Inc., Fair Labor Standards act Litig.*, 694 F. Supp. 2d 1358, 1363 (M.D. Ga. 2010).  *See also Garcia*, No. 2:06-CV-02198, 2001 U.S. Dist. LEXIS 10290 *28-29 (applying the same test); *Chao v. Tyson Foods*, 568 F. Supp. 2d 1300, 1311 (N.D. Ala. 2008) (same).  In applying this three-part test to undisputed facts, some district courts have determined as a matter of law that the donning and doffing of certain gear is integral and indispensable to a principal activity at the summary judgment stage.  *See Hoyt v. Ellsworth Co-op. Creamery*, 579 F. Supp 2d 1132, 1140-41 (W.D.

Wis. 2008); *Jordan v. IBP*, Inc. 542 F. Supp. 2d 790, 807 (M.D. Tenn. 2008); *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007).  No such undisputed facts, however, exist here.

   In arguing this issue, plaintiffs did not address the three-part test specifically, and instead asserted that donning and doffing standard clothing and gear is integral and indispensable because, among other relevant facts, it is undisputed that production employees at the Lexington facility must obtain and don most or all of their clothing and gear on site at the plant prior to entering the production floor and performing any meat processing activities.  Plaintiffs have not provided this Court with an analysis showing that plaintiffs must wear standard equipment and gear at the Lexington facility in order to primarily benefit Tyson, rather than the plaintiffs themselves as required by the three-part test.  In response, Tyson has presented this Court with enough evidence to raise an issue of material fact as to whether the mandatory standard clothing and gear benefits the plaintiffs as much as Tyson.  As Tyson points out, employees benefit from the standard clothing and gear because they are able to stay clean, warm, and safe while working on the production floor.[7]  A question of material

---

[7] Tyson asserts that OSHA, 20 U.S.C. §§ 651-78 requires Tyson to furnish employees "a place of employment which [is] free from recognized hazards that are causing or are more likely to

fact remains as to whether the donning and doffing of standard (non-unique) clothing or gear is integral and indispensable to a principal activity making it compensable under the Portal-to-Portal Act, 29 U.S.C. § 254 .

Thus, plaintiffs' motion for partial summary judgment as to defendant's affirmative defense No. 11 will be granted, and plaintiffs' motion for partial summary judgment as to defendant's affirmative defense No. 13 will be denied.

## B. Defendant's Affirmative Defense No. 12

Plaintiffs further ask this Court to deny defendant the ability to bring its asserted "de minimis" defense. *See* defendant's affirmative defense No. 12 (Filing No. 19).  As plaintiffs agree, the Supreme Court has previously recognized that employers do not need to pay employees for otherwise compensable time if that time is "de minimis."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter at issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.") As the parties acknowledge in their briefing, courts have weighed three factors in determining whether a claim is too small for

---

cause death or serious physical harm to [their] employees," and to "comply with occupational safety and health standards promulgated under this [Act]."  *Id.* at § 654.  In turn, Tyson provides that the regulations require employers to mandate the use of "personal protective equipment for eyes, face, head, and extremities [and] protective clothing . . ."  C.F.R. § 1910.132(a).

-14-

recovery and thus de minimis:  (1) the practical administrative difficulty in recording the time, (2) the size of the aggregate claim, and (3) the regularity of the additional work.  *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

The fact that this Court has denied plaintiffs' motion on defendant's affirmative defense concerning the integral and indispensable issues "reflects that the amount of daily time spent on additional 'work' is simply not an issue that can readily be ascertained at summary judgment in the particular context of this case."  *Garcia*, No. 2:06-cv-02198, 2001 U.S. Dist. LEXIS 10290 at *52.  As the parties dispute what activities constitute compensable activities in the first place, issues of material fact exist concerning the amount of time such activities take.  *See Chao*, 568 F. Supp. 2d. at 1318-19 & n.19 (denying plaintiff's motion for summary judgment on defendant's de minimis defense where factual issues remained as to the length of time of the activities at issue).

Thus, the Court will not preclude defendant from asserting a de minimis defense at trial.  Plaintiffs' motion for partial summary judgment as to defendant's affirmative defense no. 12 will be denied.

## C. Defendant's Affirmative Defense Nos. 6, 7, & 8

Plaintiffs seek partial summary judgment on defendant's good faith defense that Tyson acted in good faith pursuant to 29

-15-

U.S.C. § 259, in conformity with the DOL regulations and
interpretations of the FLSA. *See* defendant's affirmative defense
No. 8, (Filing No. 19). Defendant has abandoned this defense.
*See* defendant's brief in opposition to motion for summary
judgment (partial), at 49 (Filing No. 192). Thus, plaintiffs'
motion for partial summary judgment as to defendant's affirmative
defense No. 8 will be granted.

Plaintiffs also seek partial summary judgment on
defendant's affirmative defense that defendant acted in good
faith pursuant to 29 U.S.C. § 260 and therefore should not be
penalized with liquidated damages. *See* defendant's affirmative
defense No. 7, (Filing No. 19). Finally, plaintiffs seek partial
summary judgment on defendant's affirmative defense that
defendant did not "willfully deprive any person of any wages to
which they may have been entitled" pursuant to 25 U.S.C. §
255(a), and therefore the limitations period in this case cannot
be shortened from three years to two. *See* defendant's
affirmative defense No. 6 (Filing No. 19).

If an employer violates the FLSA, then such employer is
liable for both the total amount of unpaid wages and liquidated
damages of an equal amount. 29 U.S.C. § 216(b). An employer can
avoid liquidated damages, if he shows "to the satisfaction of the
court that the act or omission giving rise to such action was in

good faith and that he had reasonable grounds for believing his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  Section 260 has both subjective and objective components, thus, defendant must establish that it acted with good faith and reasonableness.  *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008).  "The 'good faith' requirement is a subjective standard where the employer must establish 'an honest intention to ascertain and follow the dictates of the FLSA.'" *Id.* (quoting *Hultgren v. County of Lancaster, Neb.*, 913 F.2d 498, 509 (8th Cir. 1990)).  "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* "Precise conformity" with the FLSA and its accompanying regulations and DOL interpretations is not necessary; a "reasonable belief of conformity" is all that is required.  *Chao*, 568 F. Supp. 2d at 1322.  Even where an employer's decisions about the FLSA are incorrect, liquidated damages are not proper if the employer made a good faith attempt to comply with the FLSA.  *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 918 (8th Cir. 1999); *Hultgren*, 913 F.2d at 509-10.

     Except where an employer acts willfully, which extends the limitations period to three years, a two-year statute of limitations applies to an action for unpaid wages under the FLSA. 29 U.S.C. § 255(a).  Plaintiffs bear the burden of proof on the

willfulness issue in order to make out their prima facie case for damages in the third year.  *See Nolting v. Yellow Freight Sys., Inc.*, 799 F.2d 1192, 1197 (8th Cir. 1986).  For purposes of § 255(a), willful means "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA]."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

        In this lawsuit, plaintiffs seek damages for unpaid wages for time spent donning and doffing both (1) unique *and* (2) standard equipment and gear.  In addressing the good faith and willfulness issues, plaintiffs primarily analyze defendant's conduct as to its non-payment for time spent donning and doffing standard equipment and gear.  Citing the Supreme Court's 2005 ruling in *Alvarez*, plaintiffs proclaim defendant made little if any attempt to change the way it paid its employees for donning and doffing standard gear prior to 2010.  The *Alvarez* decision, however, did not mandate that defendant begin compensating plaintiffs for time spent donning and doffing standard gear.  All *Alvarez* did was change the test utilized to analyze whether an employer must pay an employee for such activities.  Thus, a strong argument can be made that defendant has acted in good faith in refraining from paying plaintiffs for time spent donning and doffing standard clothing and gear, and defendant has not wilfully deprived plaintiffs of any wage related to standard

-18-

gear.  *Garcia*, No. 2:06-cv-02198, 2001 U.S. Dist. LEXIS 10290 at
*67-68.  Furthermore, plaintiffs have not provided this Court
with sufficient evidence that shows defendant has not
satisfactorily complied, under the good faith/willfulness
standards, with the *Reich* injunction in paying plaintiffs for the
average time spent donning and doffing unique gear; or if as a
matter of law defendant must compensate plaintiff for "actual"
time spent on such activities.

        Thus, this Court concludes (1) it is possible that
defendant has acted in good faith in refraining from paying
plaintiffs for time spent donning and doffing standard clothing
and gear and related activities, and also possible defendant has
not willfully deprived plaintiffs of wages they may be entitled
to for donning and doffing standard clothing and gear; and (2) a
question of material fact remains as to whether defendant acted
in good faith in compensating plaintiffs for the average time
spent donning and doffing unique clothing and gear and related
activities, and whether defendant willfully deprived plaintiffs
of wages they may be entitled to for "actual" time spent donning
and doffing unique clothing and gear.  *See Garcia*, No. 2:06-cv-
02198, 2001 U.S. Dist. LEXIS 10290 at *67-73 (making similar
findings on the same issue).  The Court will not preclude
defendant from asserting any good faith or willfulness defense at

-19-

this time.  Plaintiffs' motion for partial summary judgment as to defendant's affirmative defense nos. 6 & 7 will be denied.[8]

### D. Plaintiff's Meal Period Activities

Defendant has moved for partial summary judgment on plaintiffs' claims under the FLSA seeking compensation for donning, doffing, washing and other activities that take place during their meal period.  From the beginning of the class period until March 29, 2010, plaintiffs working at the Lexington plant received a 30-minute unpaid meal period everyday.  As of March 29, 2010, plaintiffs working at the Lexington plant received a 35-minute meal period, five minutes of which is paid and 30 minutes of which is unpaid.  Defendant claims because the meal period is a "bona fide meal period" plaintiffs are not entitled to compensation for any part of the meal period.  The DOL has issued a regulation addressing "bona fide meal periods":

> Bona fide meal periods are not
> worktime.  Bona fide meal periods
> do not include coffee breaks or
> time for snacks.  These are rest
> periods.  The employee must be
> completely relieved from duty for
> the purpose of eating regular
> meals.  Ordinarily 30 minutes or
> more is long enough for a bona fide

---

[8] There is a dispute as to whether plaintiffs properly put the issue of whether defendant should be allowed to bring a good faith defense regarding plaintiffs' state law claims before the Court.  Pursuant to this Court's ruling on the good faith/ willfulness issues surrounding plaintiffs' federal claims, the Court will allow defendant to bring a good faith defense as to plaintiffs' state law claims as well.

> meal period.  A shorter period may
> be long enough under special
> conditions.  The employee is not
> relieved if he is required to
> perform any duties, whether active
> or inactive, while eating.  For
> example, an office employee who is
> required to eat at his desk or a
> factory worker who is required to
> be at his machine is working while
> eating.

29 C.F.R. § 785.19(a).  The Eighth Circuit has joined the
majority of the circuit courts in adopting the "predominantly-
for-the-employer's benefit standard" in determining whether a
meal period is bona fide under the FLSA.  *Henson v. Pulaski Co.
Sheriff Dept.*, 6 F.3d 531, 534 (8th Cir. 1993).  Under the
predominant benefit analysis, an employee's meal period is bona
fide and thus considered noncompensable when the employee's time
is not spent predominantly for the benefit of the employer.
Indeed, even if an employee is required to do some amount of work
during a meal period, that entire meal period may be
noncompensable.  *Garcia*, No. 2:06-cv-02198, 2001 U.S. Dist. LEXIS
10290 at *58 (citing *Lamon v. City of Shawnee, Kansas*, 972 F.2d
1145, 1156-67 (10th Cir. 1002)).  Defendant asserts there is no
genuine factual dispute that plaintiffs spend the meal period as
a whole predominantly for their own benefit such that time spent
donning, doffing, and on related activities is noncompensable
pursuant to the Eighth Circuit's ruling on the DOL regulation.
In the alternative, defendant moves for partial summary judgment

-21-

on plaintiffs' meal period claim because the donning and doffing activities performed during the meal period are de minimis.

Although the parties agree (pursuant to plaintiffs' expert's opinion) that plaintiffs in the Fabrication side of the plant spend an average of 6.45 minutes on donning and doffing activities during the meal period and plaintiffs in the Slaughter side of the plant spend an average of 3.66 minutes on donning and doffing activities during the meal period, the Court cannot determine as a matter of law whether plaintiffs' time is or is not spent predominantly for the benefit of the employer.  The parties agree that during the meal period, before entering the cafeteria, plaintiffs are required to remove all knives, scabbards and smocks.  The parties, however, have not presented any evidence showing that, if items are required by defendant to be removed during the meal period, whether such is required predominantly for the defendant's benefit or the plaintiffs'.  Moreover, it is not clear how much of the 6.45 minutes and 3.66 minutes plaintiffs spend donning and doffing the required items versus the non-required items.  To complicate issues more, the parties agree that plaintiffs are required to remove almost all of their equipment before using the restroom, but once again the parties have not shown the Court that this is a requirement that

predominantly benefits defendant, or if it benefits plaintiffs.[9]
Thus, material issues of fact remain as to whether the activities
performed during the meal period predominantly benefit the
defendant or plaintiffs and how much time is spent on such
activities in light of the evidence surrounding the requirements
of plaintiffs' restroom use.  *See Garcia,* No. 2:06-cv-02198, 2001
U.S. Dist. LEXIS 10290 at *59-60 (denying summary judgment on
meal period claim due to similar issues of material fact);
*Jordan*, 542 F. Supp.2d at 814-15 (same).  Defendant's motion for
partial summary judgment as to plaintiffs' meal period claims
will be denied.

### E. Plaintiffs' state law claims

Plaintiffs bring claims for unpaid wages pursuant to
the Nebraska's Wage and Hour Act ("Wage and Hour Act"), Neb. Rev.
Stat. § § 48-1201 to 1209.  The Wage and Hour Act provides a
minimum hourly wage ($5.15 through July 23, 2007; $5.85 from July
24, 2007, through July, 23, 2008; $6.55 from July 24, 2008,
through July 23, 2009; and $7.25 after July 24, 2009).  The
minimum wage rates in Nebraska are identical to those set by the
FLSA.  The Wage and Hour Act provides that an employer who
violates the minimum wage provision "shall be liable to the

---

[9] Although the parties did not address this issue, it is
likely plaintiffs use the restroom during their meal period.

employees affected in the amount of their unpaid minimum wages." Neb. Rev. Stat. § 48-1206.  Thus, the Wage and Hour Act does not provide plaintiffs with any substantive rights to wages.  Only if it is found that plaintiffs have a right to unpaid wages under the FLSA (or any other law providing a substantive right to wages), and defendant fails to compensate plaintiffs for such wages, do plaintiffs have a claim pursuant to the Wage and Hour Act to recover wages.  *See Garcia*, No. 2:06-cv-02198, 2001 U.S. Dist. LEXIS 10290 at *75-76 (citing *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) (if a plaintiff has a right to wages pursuant to the FLSA, a state wage payment act serves as a platform to collect such unpaid wages)).

The parties have engaged in a complicated debate as to whether the Court should apply the *Klinghoffer* rule in its analysis of plaintiffs' claims under the Wage and Hour Act.  The Eighth Circuit has applied the *Klinghoffer* rule to the FLSA's minimum wage provision, 29 U.S.C. § 206(a):

> A violation of section 206(a) occurs when an employee is paid at a rate that is below the minimum rate.  The statute requires the payment of a minimum wage to "employees who in any workweek [are] engaged in commerce," 29 U.S.C. § 206(a) and set the minimum wage in terms of an hourly rate. However no violation occurs "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirements

-24-

> being equal to the number of hours
> actually worked that week
> multiplied by the minimum hourly
> statutory requirement."

*Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357
(8th Cir. 1986) (quoting *United States v. Klinghoffer Bros.
Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)).  No court in
Nebraska has applied the federal *Klinghoffer* rule to the state
Wage and Hour Act.  Regardless, defendant claims the rule should
be applied, and even if plaintiffs can prove all of the
activities for which they seek compensation are compensable,
their "adjusted" hourly wage rates pursuant to the *Klinghoffer*
rule will be above the required state minimum wage rates, and
thus plaintiffs' Wage and Hour Act claims should be dismissed.

           In light of the fact that material factual disputes
remain as to whether plaintiffs have any right to wages pursuant
to the FLSA, a ruling concerning the *Klinghoffer* rule's
application to "hypothetical" wages claimed pursuant to the Wage
and Hour Act would be premature.  If it is found at trial that
plaintiffs have a right to wages under the FLSA, and a
*Klinghoffer* calculation would affect plaintiffs' claims under the
Wage and Hour Act, defendant will be permitted to present an
argument that the *Klinghoffer* calculation should apply.  For the
time being, defendant's arguments are duly noted by the Court,
but defendant's motion for summary judgment on plaintiffs' Wage
and Hour Act claim will be denied.

Plaintiffs also bring claims for compensation under the Nebraska Wage Payment and Collection Act ("NWPCA"), Nev. Rev. Stat. §§ 48-1228 to 48-1232.  The NWPCA allows an employee to bring a claim for unpaid wages, Neb. Rev. Stat. § 48-1231, and defines "wages" as:

> compensation for labor or services rendered by an employee, including fringe benefits, *when previously agreed to and conditions stipulated have been met by the employee*, whether the amount is determined on a time, task, fee, commission, or other basis.

Neb. Rev. Stat. § 48-1229 (emphasis added).  Like the Wage and Hour Act, the NWPCA provides no substantive right to wages, it merely provides a means for collecting unpaid wages.  *Garcia*, No. 2:06-cv-02198, 2001 U.S. Dist. LEXIS 10290 at *75-76 (citing *Bouaphakeo*, 564 F. Supp. at 883.

Defendant claims plaintiffs cannot prove that they are owed the compensation they seek because (1) they cannot determine that the alleged "wages" owed were previously agreed to by defendant; and (2) they cannot demonstrate that they have met any conditions that were stipulated to.[10]  The Court rejects both of defendant's argument.  Plaintiffs are/were hourly production

_____

[10] Defendant cites *Freeman v. Central States Health & Life Co.*, 2 Nep. App. 803, 807, 515 N.W.2d 131, 134-35 (1994) and *In Re:  Wal-Mart Wage and Hour Employment Practices Litigation and All Related Cases*, 490 F. Supp. 2d 1091 (D. Nev. 2007), such authority is distinguishable, and thus not entitled to legal force.

employees of the defendant.  If it is found that plaintiffs have worked hours that they have not been paid for, they may use the NWPCA as a mechanism for collecting those wages.  Thus, defendant's motion for summary judgment on plaintiffs' NWPCA claim will be denied.  Accordingly,

IT IS ORDERED:

1)   Plaintiffs' motion for partial summary judgment (Filing No. 181) as to defendant's affirmative defense Nos. 8 and 11 is granted.

2)   Plaintiffs' motion for partial summary judgment (Filing No. 181) as to defendant's affirmative defense Nos. 6, 7, 12 and 13 is denied.

3)   Defendant's partial summary judgment on plaintiffs' FLSA claims with respect to compensation for activities performed during the meal period (Filing No. 185) is denied.

4)   Defendant's motion for summary judgment on plaintiffs' state law claims (Filing No. 185) is denied.

DATED this 6th day of April, 2011.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court